## ARTHUR JOSEPH MADORE, JR. *v.* BALTIMORE COUNTY, MARYLAND

[No. 346, September Term, 1976.]

*Decided December 30, 1976.*

The cause was argued before THOMPSON, POWERS and LOWE, JJ.

*Charles E. Brooks*, with whom were *William N. White* and *Brooks & Turnbull* on the brief, for appellant.

*Steven A. Charles*, with whom were *Jack L. Hardwick* and *Hardwick, Tripoda & Harris* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

This appeal calls for the first appellate application of subsection (b), added by Ch. 519, Laws of Maryland, 1972, to Code, Art. 57, § 18. After the 1972 enactment, the entire § 18 read:

> "(a) No action shall be maintained and no claims shall be allowed against any municipal corporation or against any county or Baltimore City for unliquidated damages for any injury or damage to person or property unless within 180 days after the injury or damage was sustained, written notice setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or in the case of death, by his executor or administrator, to the county commissioners, county council, the corporate authorities of the municipal corporation or the city solicitor of Baltimore City, as the case may be. In Montgomery County and Howard County, written notice shall be presented to the county executive.
>
> "(b) Notwithstanding the provisions of (a) above, the court may, upon motion and for good cause shown, entertain the suit even though the required notice was not given, unless provided further the defendant can affirmatively show that its defense has been prejudiced thereby."

On 9 October 1975 Arthur Joseph Madore, Jr., appellant here, filed suit in the Circuit Court for Baltimore County, naming Baltimore County, Maryland, a municipal corporation, as the sole defendant. The declaration claimed damages for injuries sustained by the appellant in an automobile collision which happened on 16 October 1974, while the appellant was operating his vehicle on Jarrettsville Pike, a public road built and maintained by Baltimore

County. It was alleged that the County was negligent in the design and maintenance of the highway, and that as a result of that negligence the appellant was caused to lose control of his vehicle and cross the center line of the highway and collide head-on with an oncoming vehicle.

It is not questioned that the claim made in the declaration was the kind of claim of which Art. 57, § 18 (a) required that written notice be presented to the appropriate municipal authorities. The declaration did not allege that notice had been given, nor did it refer to the statute at all. The notice is a condition precedent to the right to maintain the suit, and compliance with the notice statute should be alleged in the declaration as a substantive element of the cause of action. *Neuenschwander v. Wash. San. Com.*, 187 Md. 67, 76, 48 A. 2d 593 (1946); *Cotham and Maldonado v. Board*, 260 Md. 556, 562-64, 273 A. 2d 115 (1971).

The County's response to the declaration was a motion to dismiss, under Maryland Rule 323, on the dual grounds of governmental immunity and failure to comply with Art. 57, § 18 by giving notice of the claim within 180 days of the injury.

Appellant answered the motion by stating that he had good cause why the suit should be entertained; that he sustained severe injuries in the accident, was rendered unconscious and required extensive hospitalization, the last having terminated on 13 June 1975; that he consulted counsel within 30 days after his discharge; that he placed the County on notice on 8 August 1975; and that he was totally unaware of any possible liabilities and which parties might be responsible.

Both parties requested a hearing. Judge Walter R. Haile held the hearing on 11 March 1976. Rejecting the immunity defense in short order, Judge Haile wisely cut through form to reach substance, and considered the answer to the County's motion to dismiss as if it were a motion by Madore, under Art. 57, § 18 (b), for the court to entertain the suit even though the required notice was not given.

To meet his obligation to show good cause, appellant relied entirely upon his own testimony. He said that he regained

consciousness about a week after the accident, in St. Joseph's Hospital. He remained there between five and six weeks until his discharge on 23 November in a wheelchair. His left leg and left arm were in casts. His right leg was also injured. At home, where he lived with his parents, he was confined to the wheelchair or bed until January. On 31 March 1975 he returned to the hospital for removal of wires and pins, and again returned home after six days. He began walking with crutches around the end of April. On 18 May 1975 he entered the hospital again, for reconstructive surgery, and was discharged on 28 June 1975.

Appellant explained that during his time at home he was limited to the confines of his home, except for a few times that he went out. When he did, he was wheeled to the car in his wheelchair, and lifted into the car. Asked if prior to seeing a lawyer in August 1975, he considered bringing an action or claim against anybody, Madore answered that in the beginning he thought he would be well on the road to recovery, and all he was worried about was getting his legs back. He said he had never been hospitalized before, and didn't quite know how to handle the whole thing. His counsel did not press for a more responsive answer.

On cross examination Madore agreed that both in the hospital and at home he could use the telephone, although he did so rarely. About a week after the accident, he was aware of what was going on around him, but had thoughts about his health on his mind. He was asked if he could have gone to an attorney sooner if he had thought about it, and answered by explaining his hopes of being able to regain his walking, and to play sports. He said that he wasn't worried much about an attorney. He then agreed that he could have contacted a lawyer earlier if it had occurred to him.

After hearing the evidence offered in support of the motion, and arguments of counsel, Judge Haile found that good cause for failure to give the required notice was not shown. He denied Madore's motion to entertain the suit, and granted the county's motion to dismiss the case.

Appellant urges this Court to hold that the lower court erred in construing good cause, and as to the sufficiency of

the evidence to amount to good cause. We think the question is whether the lower court abused its discretion.

In enacting the escape clause, § 18 (b), the legislature made no attempt to define what constitutes good cause, but clearly committed that determination to the discretion of the court. This is generally so when it is the intent of the legislature to permit, but not to require, a court to excuse the failure of a party to perform an act, ordinarily procedural in nature, within a prescribed time period. If it is the wish of the legislature either to compel, or to prohibit, excuse of non-compliance, either extreme is easily expressed. When the legislature chooses not to apply either extreme, but prefers a flexible rule in between, it adopts good cause as the measure, and leaves it to the court to do the measuring.

There could be no clearer example of lodging discretion in the court. The very purpose of that discretion is to permit the court to accomplish substantial justice under varying circumstances, giving due regard to the reason for the requirement, and the rights of the parties.

In *Merrimack Park v. County Board*, 228 Md. 184, 179 A. 2d 345 (1962), the Court of Appeals considered what was then (and now) Maryland Rule B5 (formerly a part of Rule 1101) in the subtitle relating to appeal from administrative agencies. The appellant there had filed its order for appeal from the administrative agency in the circuit court, but had failed to file its petition in that court within the prescribed time. Rule B5 provided that upon such a failure, "the court shall dismiss the appeal unless cause to the contrary be shown." The lower court dismissed Merrimack Park's appeal. The Court of Appeals interpreted "cause" as used in the rule to be identical in meaning to "good cause". Upon a showing that there was an informal understanding between counsel to waive the time requirement, the Court of Appeals said, at 188:

> "The facts and circumstances disclosed in this record amount to cause within the meaning of the Rule cited, and the exercise of a reasonable discretion required a rejection of the motion to dismiss."

The Court of Appeals applied the same rule in *Toomey v. Gomeringer*, 235 Md. 456, 201 A. 2d 842 (1964). It said, at 460:

> "We accordingly hold that the time requirement of Rule B9 is not mandatory, and we think it was within Judge Turnbull's discretion to refuse to strike out the answer of the protestants, and we find nothing to indicate any abuse of discretion on his part in so refusing."

A clear and logical definition of good cause is found in *Lee v. Houston Fire & Cas. Ins. Co.*, 530 S.W.2d 294 (Tex. 1975), quoting from the earlier Texas case of *Hawkins v. Safety Casualty Co.*, 207 S.W.2d 370 (Tex. 1948). That Court said:

> "The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."

In the appellant's brief here he calls our attention to one case, which he says gives a reasonably suitable definition of good cause. The case cited is *Intermountain L. & B. Sup., Inc. v. Glens Falls Ins. Co.*, 424 P. 2d 884 (Nev. 1967). Before the Supreme Court of Nevada was a lower court's refusal to set aside an entry of default "for good cause shown". The motion to vacate was premised upon the mistake, inadvertence, surprise and excusable neglect of counsel. Referring to the affidavit supporting the motion the Court said:

> "The showing does not necessarily establish mistake, surprise or inadvertence. It does suggest neglect. However, the lower court was not bound to declare such conduct excusable. [Citations omitted.]

Though we prefer to have a case resolved upon its merits [Citations omitted.] such preference alone will not allow us to overrule an exercise of discretion below when the rules governing the vacation of a default have not been met. * * * In our judgment it was permissible for the lower court to rule that neither inadvertence, mistake, surprise nor excusable neglect was shown."

The discretion with which all courts determine whether good cause has or has not been shown is broad. It involves the exercise of one of the most important judicial functions. A ruling made in the exercise of that discretion is entitled to the utmost respect. It should not be overturned by an appellate court unless there is a clear showing that the discretion has been abused — that the result falls outside its broad limits.

We see nothing in the record in this case that shows an abuse of discretion.

*Judgment affirmed.*
*Appellant to pay costs.*