716 A.2d 1100

**John R. WILLIAMS, Jr.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 1921, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 2, 1998.

120

Stuart H. Arnovits (Cohen, Snyder, Eisenberg & Katzenberg, P.A., on the brief) Baltimore, for appellant.

Karen L. Federman Henry (Charles W. Thompson, Jr., County Attorney and Joann Robertson, Chief, Division of Litigation, on the brief) Rockville, for appellees.

Argued before WENNER, HOLLANDER and SALMON, JJ.

SALMON, Judge.

One of the questions raised in this appeal is whether a plaintiff must give a local government the 180–day notice of claim required under the Local Government Tort Claims Act (LGTCA) if suit is brought pursuant to Md.Code (1977, 1998 Repl.Vol.), § 17–107 of the Transportation Article (Vol.II) (TA). This issue is one of first impression.

A more routine matter at issue is whether, assuming notice of claim is required, did the plaintiff's attorney show "good cause" within the meaning of Md.Code (1974, 1995 Repl.Vol., 1997 Supp.), § 5–304(c) of the Courts and Judicial Proceeding Article (CJ),[1] for failing to give the notice that is a prerequisite of suit.

## FACTS

On August 9, 1994, appellant, John Williams, Jr., was operating a motor vehicle on a public street in Prince George's County. His vehicle was stopped, and he was waiting for traffic to clear at an intersection, when a vehicle driven by Thomas Maynard made a right turn from an adjoining street, striking the front side of the Williams vehicle. Maynard was

---

1. On April 8, 1997, CJ §§ 5–401 to 5–404 were recodified without change at §§ 5–301 to 5–304. All references to the LGTCA will thus be to CJ § 5–301 et seq.

acting within the scope of his employment for Montgomery County and was operating a county-owned vehicle when the accident occurred. As a result of the accident, appellant sustained personal injuries.

One week after the accident, a secretary with a law firm retained by appellant spoke with Bruce Coffyn, the claims supervisor for Consolidated Risk Management Services (CRMS), regarding the August 9th accident. CRMS, at that time, was acting as the claims administrator for Montgomery County, which was self-insured pursuant to TA § 17–103. Mr. Coffyn told the secretary he already had some information pertaining to the accident and directed her to send a letter of representation to his attention. That same day, appellant's attorney wrote a letter to Mr. Coffyn formally advising him of the claim. Mr. Coffyn acknowledged the claim by letter dated August 24, 1994.

Thereafter, for the next year and one-half, appellant's counsel exchanged correspondence with representatives of CRMS regarding appellant's treatment. In June 1996, appellant's counsel was contacted by Peter Buthmann, a representative of Trigon Administrators, Inc. (Trigon). Trigon advised appellant's counsel that he was now the claims representative of Montgomery County and that he was assigned to appellant's case. Trigon and appellant's counsel thereafter attempted to settle the case, but the settlement attempts were unfruitful.

On March 10, 1997, appellant filed suit against Maynard and Montgomery County. Montgomery County filed an answer to the complaint, in which it pointed out that appellant had failed to allege that he had complied with the notice requirements of the LGTCA. Appellant filed an amended complaint, which contained the following allegation:

> That [p]laintiff timely forwarded Notice of his claim to [d]efendant Montgomery County, and otherwise complied with all Notice provisions of the Local Government Tort Claims Act.

Montgomery County filed a motion to dismiss the amended complaint in which it asserted that the plaintiff had not

complied with the 180–day post-accident notice of claim requirement of the LGTCA. In his response, appellant contended:

1. That [d]efendant Montgomery County is not entitled to assert governmental immunity in this case, pursuant to Section 17–107(c) of the Transportation Article, and Section 5–399.4 of the Courts and Judicial Proceedings Article.

2. That even to the extent that the [d]efendant may be entitled to assert governmental immunity, [p]laintiff can show good cause for this [c]ourt to deny [d]efendant's Motion, and that [d]efendant has not been prejudiced by any lack of required notice, pursuant to Section 5–404(c) of the Courts and Judicial Proceedings Article. Therefore, this [c]ourt should entertain this suit.

In an accompanying memorandum, the appellant alleged that the LGTCA "creates a cause of action against local governments for persons injured through the negligence of an employee of the local government, by waiving sovereign immunity. Under CJ § 5–303, the liability of a local government is limited to Two Hundred Thousand Dollars ($200,000) per individual claim." Appellant went on to argue that under TA § 17–103 the county is not entitled to "raise any defense of sovereign or governmental immunity, regardless of whether or not timely or properly notified, to the extent of its security of self insurance in place."

A hearing was held on the motion to dismiss before Circuit Court Judge Paul A. McGuckian. Judge McGuckian granted the motion to dismiss after ruling that Montgomery County was entitled to notice pursuant to the LGTCA, that appellant had not complied substantially with the notice requirement, and that appellant had failed to show "good cause" for failure to give the required notice. This timely appeal followed.[2]

---

**2.** Maynard was never served by appellant. The dismissal of the case as against Montgomery County thus became a "final" judgment within the meaning of Rule 2–602. *Hardy v. Metts,* 282 Md. 1, 5, 381 A.2d 683 (1978).

## I. STANDARD OF REVIEW

Technically, when a party moves to dismiss for failure to state a claim upon which relief can be granted, as was done in this case, we look only to the allegations set forth in the most recent complaint filed by the plaintiff to see if the plaintiff has stated a cause of action. *Bobo v. State,* 346 Md. 706, 708–09, 697 A.2d 1371 (1997). In the subject case, there is no question but that appellant sufficiently *alleged* that he gave the required notice under the LGTCA, but there is likewise no question that the trial judge, in granting the motion, went outside the four corners of the complaint and considered allegations and materials presented by the plaintiff/appellant in his opposition to the motion to dismiss.

Maryland Rule 2–322(c) reads, in pertinent part:

If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

In the case at hand, no one objected to the appellant's referral to matters outside the four corners of the amended complaint in his response to the motion to dismiss, and even though the trial court did not specifically say that he was treating the dismissal motion as a motion for summary judgment, it is clear that the motion to dismiss was transmuted by the court into a motion for summary judgment. *See Hrehorovich v. Harbor Hospital Ctr., Inc.,* 93 Md.App. 772, 780–81, 614 A.2d 1021 (1992) (trial court's grant of a motion to dismiss treated as the grant of a motion for summary judgment even though trial court made no mention of the motion's transmutation), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993). In order to grant a motion for summary judgment the trial court must determine that "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no dispute as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Vanhook v. Merchants Mut. Ins. Co.*, 22 Md.App. 22, 25, 321 A.2d 540 (1974). Our role as an appellate court in reviewing the trial court's grant of such a motion is merely to determine whether the trial judge was legally correct. *Beatty v. Trailmaster Prods. Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993).

## II. DISCUSSION

### Issue 1

Appellant argues that "the trial court erred in granting appellee's motion ... since the notice requirement under the Local Government Tort Claims Act does not apply to motor torts arising under the Transportation Article."

The LGTCA is set forth in CJ §§ 5–301 to 5–304. CJ § 5–304 provides, in pertinent part:

**Actions for unliquidated damages.**

(a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought *against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.*

(b) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

\* \* \*

(iii) In Montgomery County, to the County Executive.

\* \* \*

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

(c) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can

affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

(Emphasis added).

 Appellant begins his argument by asserting that the LGTCA "waives governmental or sovereign immunity" when the plaintiff complies with the Act. This technically is untrue. *Pavelka v. Carter,* 996 F.2d 645, 649 (1993); *Khawaja v. City of Rockville,* 89 Md.App. 314, 318, 598 A.2d 489, *cert. granted,* 325 Md. 551, 601 A.2d 1114 (1992), *dismissed,* 326 Md. 501, 606 A.2d 224 (1992). Although the LGTCA does not waive governmental immunity, it does serve the useful function of protecting "local government employees from suit and judgments on alleged torts committed by them within the scope of their employment, in order to maintain their incentive to perform to the best of their abilities." *Pavelka,* 996 F.2d at 649 (citing *Ennis v. Crenca,* 322 Md. 285, 291, 587 A.2d 485 (1991)). Under the LGTCA, local government entities are obligated to defend their employees for job-related tort claims. *See* CJ § 5–301(a). The Act prohibits direct execution of judgment against those employees absent proof of actual malice. *Id.* In the absence of malice, the Act forces successful plaintiffs to execute their judgment against the local government instead of against the employees. *See* CJ §§ 5–302(b) and 5–303(b). Moreover, under the LGTCA, a plaintiff may not sue a local government, such as Montgomery County, directly but must sue, instead, the employee. *See Williams v. Prince George's Co.,* 112 Md.App. 526, 552, 685 A.2d 884 (1996). Appellant next asserts that his suit against the county is brought pursuant to TA § 17–107, which reads:

(a) *Vehicle not covered by required security.*—A person who knows or has reason to know that a motor vehicle is not covered by the required security may not:

(1) Drive the vehicle; or

(2) If he is an owner of the vehicle, knowingly permit another person to drive it.

(b) *Evidence of violation of subsection (a).*—(1) In any prosecution under subsection (a) of this section the introduction of the official records of the Motor Vehicle Administration showing the absence of a record that the vehicle is covered by the security required under § 17–104 of this subtitle shall be prima facie evidence that a person knows or has reason to know that a motor vehicle is not covered by the required security.

(2) The introduction of evidence of the records of the Administration may not limit the introduction of other evidence bearing upon whether the vehicle was covered by the required security.

(c) *Defense of sovereign immunity.* An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity as described under § 5–524 of the Courts and Judicial Proceedings Article.[3]

■■ Appellant contends that because he brought suit under TA § 17–107, he need not give notice to the county. Overlooked in this argument, however, is the specific requirements of the LGTCA (CJ § 5–304(a)), which says that except for good cause shown as provided in subsection c, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section was given within 180 days after the injury." Appellant's claim against Montgomery County is, of course, for unliquidated damages. Yet, appellant does not, directly, suggest any way around this language.

---

**3.** Section 5–524 provides, in pertinent part:

**Negligent use of motor vehicle while in government service.**

An owner or lessee of any motor vehicle registered under Title 13 of the Transportation Article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government.

Appellant does point out, however, that the LGTCA is "very similar to the Maryland Tort Claims Act (MTCA), which is set forth in the Md.Code (1984, 1995 Repl.Vol.), § 12–101 *et seq.* of the State Government Article (SG). The MTCA governs suits against the State of Maryland or its agencies. Unlike the LGTCA, the MTCA does waive immunity for the State and its agencies, and thus a party can sue a state agency under the MTCA—if certain conditions, including notice to the State Treasurer, are met. *See* SG §§ 12–107 and 12–108. The notice of claim provision of the MTCA is set forth in SG § 12–106, and it differs markedly from the notice provision of the LGTCA. SG § 12–106(b) provides:

*Claim and denial required.*—A claimant may not institute an action *under this subtitle* unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 3 years after the cause of action arises.

(Emphasis added.) By its terms, SG § 12–106(b) does not prohibit the institution of suit except those filed pursuant to the MTCA. In contrast, the LGTCA says that except as provided in CJ § 5–304(c) no claims against local governments or their employees may be brought unless the required 180–day notice is given.

Appellant emphasizes that in *Collier v. Nesbitt,* 79 Md.App. 729, 733–34, 558 A.2d 1242 (1989), this Court held that, although the plaintiffs/appellants failed to meet the notice requirements under the MTCA, nevertheless they were not prevented from bringing suit against a State agency. While appellant correctly recites the holding of the *Collier* case, our analysis in *Collier* does not help appellant. In *Collier,* the plaintiffs/appellants argued that the notice requirement of the MTCA was inapplicable to their case because their suit was governed by TA § 17–702. We agreed, saying:

Section 12–106 notice to the Treasurer is mandatory only for actions under the [Maryland] Tort Claims Act. The instant case is not such an action.

*Collier*, 79 Md.App. at 733, 558 A.2d 1242. In contradistinction to SG § 12–106, CJ § 5–304 does not restrict its application to cases brought under LGTCA.

Appellant also relies upon the case of *State v. Harris*, 327 Md. 32, 607 A.2d 552 (1992), which considered the same question that was decided in *Collier*. In resolving that issue, the *Harris* Court affirmed this Court, which had held that "Harris could bring his action under [TA] § 17–107(b) independently of the requirements of the MTCA, and therefore was not required to file notice of claim with the State Treasurer prior to instituting suit." *Harris*, 327 Md. at 36, 607 A.2d 552. The Court of Appeals affirmed. *Id.* at 41, 607 A.2d 552. In so doing, the Court commenced its discussion by pointing out that CJ § 5–406(a) "provides that 'an action may not be instituted *pursuant to this subtitle* unless the claimant has first presented the claim in writing to the State Treasurer or his designee and the claim has been finally denied.' (Emphasis added.)" *Id.* at 35, 607 A.2d 552. What was formerly CJ § 5–406(a) is now recodified as SG § 12–106. The Court in *Harris* also pointed out that MTCA was " 'intended to be in addition to and not in limitation of any other law waiving the sovereign immunity of the State in tort or authorizing the State to purchase or otherwise provide insurance for tortious conduct.' " *Id.* No similar provisions can be found in the LGTCA.

In sum, the LGTCA, unlike the MTCA, has nothing to do with waiver of sovereign immunity. More important, the LGTCA plainly says that, with an exception to be considered *infra*, no suit can be commenced against a local government or its agent unless the plaintiff complied with the Act's 180–day notice requirement. In *Baltimore County v. Wesley Chapel Bluemount Ass'n*, 110 Md.App. 585, 599–600, 678 A.2d 100 (1996), *rev'd on other grounds*, 347 Md. 125, 699 A.2d 434 (1997), we said:

The fundamental goal of statutory construction is to ascertain and effectuate the intention of the Legislature. *Oaks v. Connors*, 339 Md. 24, 35 [660 A.2d 423] (1995). The primary source for determining legislative intent is the language of the statute. *In re Douglas P.*, 333 Md. 387, 392 [635 A.2d 427] (1994); *Vest v. Giant Food Store [Stores], Inc.*, 329 Md. 461, 466 [620 A.2d 340] (1993). We will read the statute in a natural and sensible fashion, assigning the words of the statute their ordinary and commonly understood meanings, absent evidence that the General Assembly intended a different meaning. *Board of Trustees of Maryland State Retirement and Pension Systems v. Hughes*, 340 Md. 1, 7 [664 A.2d 1250] (1995); *In re Roger S.*, 338 Md. 385, 391 [658 A.2d 696] (1995).

"[W]hen there is no ambiguity or obscurity in the language of the statute, there is no need to look elsewhere to ascertain the intent of the legislative body." *Montgomery County v. Buckman*, 333 Md. 516, 523 [636 A.2d 448] (1994). In the absence of an ambiguity, the courts " 'are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning.' " *Fikar v. Montgomery County*, 333 Md. 430, 434–35, 635 A.2d 977 (1994), quoting *Potter v. Bethesda Fire Department*, 309 Md. 347, 353, 524 A.2d 61 (1987).

Here, the language in the LGTCA is unambiguous and the notice requirement set forth in CJ § 5–304 is applicable to cases brought against the local government or its agents pursuant to TA § 17–107.

### Issue 2

■ Appellant contends that he substantially complied with the requirements of CJ § 5–304 by notifying the county's insurer rather than the County Executive. If this were an issue of first impression, this contention would, at a minimum, present a close question. *See* Annotation, *Persons Upon Whom Notice of Injury or Claim Against Municipal Corporations May or Must Be Served*, 23 A.L.R.2d 969, 969–72

(1952). Unfortunately for appellant, however, the Court of Appeals has rejected a similar contention in the case of *Loewinger v. Prince George's County*, 266 Md. 316, 318, 292 A.2d 67 (1972).

In *Loewinger*, Prince George's County was sued for injuries received by the plaintiff as a result of medical malpractice allegedly committed by agents of the county. *Id.* at 316, 292 A.2d 67. No notice was given to the County Council nor to the County Commissioners as required by Article 57, section 18 (the predecessor of CJ § 5–304), although written notice of the plaintiff's claim was sent to the county's insurer within a month of the date of injury. *Id.* at 317, 292 A.2d 67. As in the case at hand, the county's insurer acknowledged receipt of the notice and various agents of the county promptly investigated the incident. *Id.* In rejecting the plaintiff's claim that there had been substantial compliance with the notice statute (Art. 57, § 18), the Court said:

> While claimants may consider this type of legislation to be only a hurdle in an obstacle course erected to frustrate claims against municipal corporations, its purposes are apparent and the validity of such legislation has been upheld. *Neuenschwanger [Neuenschwander] v. Washington Suburban Sanitary Commission*, 187 Md. 67 [48 A.2d 593] (1946).

> In *Jackson v. Bd. of Co. Comm'rs*, 233 Md. 164, 168 [195 A.2d 693] (1963), considering the same statute, this Court said: " * * * If the purpose of the statutes is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically." It was there held that a notice, meeting statutory standards, when actually received by the County by ordinary mail within the time set, would gratify the requirements of the statute, although the notice was not delivered in person or by registered mail.

> This is not to say that any information at all, conveyed to anyone connected with the county, is sufficient. There must be substantial compliance in order to give the statute effect. Lacking here was any direct notice whatever to the County Commissioners or Council. That the hospital authorities knew about an accident and the liability carrier investigated

the injury and received a communication from plaintiff's attorney informing it of his representation, is insufficient compliance with the statute.

*Id.* at 317–18, 292 A.2d 67.

Appellant attempts to distinguish *Loewinger* by pointing out that it "was decided prior to the effective date of the 1972 amendment to the statute, which created a waiver of the notice requirement for good cause if there was no prejudice to the [a]ppellee by lack of notice." It is true that the notice statute, after *Loewinger* was decided, was changed to provide an escape hatch that allowed cases to go forward if a plaintiff, who failed to give notice, could show "good cause" for the failure. But the issue of whether "good cause" has been shown for failure to give notice has nothing whatsoever to do with whether the plaintiff "substantially complied" with the notice in the first place. Thus, *Loewinger* is binding on us and compels us to hold that appellant's notice to the county's insurer did not "substantially comply" with the requirements of CJ § 5–304.

■ Appellant argues, in the alternative, that he showed "good cause" for his failure to give notice in compliance with the statute. He asserts that his omissions were merely technical and can be excused due to the fact that the statute contains many requirements not readily known by the general practitioner.

In *Madore v. Baltimore County,* 34 Md.App. 340, 367 A.2d 54 (1976), the Court was called upon to interpret Article 57, section 18(b),[4] which is substantively identical to CJ § 5–304.

---

4. Former Article 57, section 18, read:

 (a) No action shall be maintained and no claims shall be allowed against any municipal corporation or against any county or Baltimore City for unliquidated damages for any injury or damage to person or property unless within 180 days after the injury or damage was sustained, written notice setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or in the case of death, by his executor or administrator, to the county commissioners, county council, the corporate authorities of the mu-

The plaintiff in *Madore* was, on October 16, 1974, injured in an accident allegedly caused by the negligence of an agent of Baltimore County. The last day for giving notice under the statute was April 14, 1975. *Id.* The plaintiff gave no notice during that time period. Plaintiff's excuse was that he "was totally unaware of any possible liability [as to] which party might be responsible for his injuries," until he consulted a lawyer in August of 1975. *Id.* at 342–43, 367 A.2d 54. He stressed that he suffered serious injuries in the accident and that he was unconscious for one week post-accident. *Id.* at 341–43, 367 A.2d 54. He was discharged from the hospital in a wheelchair, approximately five weeks after the accident, with his left arm and leg in a cast and his right leg injured. He was required to use a wheelchair until January 1975 and at the end of March 1975 he returned to the hospital for removal of wires and pins. *Id.* at 343, 367 A.2d 54. In May 1975, he commenced still another hospital stay, which lasted more than six weeks. The plaintiff in *Madore* did not see a lawyer until August 1975—after the 180–day notice period had expired. *Id.* The *Madore* Court said:

> A clear and logical definition of good cause is found in *Lee v. Houston Fire & Cas. Ins. Co.*, 530 S.W.2d 294 (Tex.1975), quoting from the earlier Texas case of *Hawkins v. Safety Casualty Co.*, [146 Tex. 381] 207 S.W.2d 370 (Tex.1948). That Court said:
>
> > "The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of

nicipal corporation or the city solicitor of Baltimore City, as the case may be. In Montgomery County and Howard County, written notice shall be presented to the county executive.

(b) Notwithstanding the provisions of (a) above, the court may, upon motion and for good cause shown, entertain the suit even though the required notice was not given, unless provided further the defendant can affirmatively show that its defense has been prejudiced thereby.

diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."

*Id.* at 345, 367 A.2d 54.

In *Madore*, we upheld the trial court's refusal to find "good cause" for failure to give the notice, saying that the trial court's discretion in finding, or failing to find, good cause was broad. *Id.* at 346, 367 A.2d 54.

The reasons for failing to give notice in *Madore* were far more compelling than those presented here. If the trial court in *Madore* did not abuse its discretion in failing to find "good cause" when a plaintiff was seriously injured and was without counsel during the 180–day notice period, it is impossible for us to say that the trial court in the case at hand erred. The only excuse appellant has for failing to notify the County Executive in the case *sub judice* was that his attorney was unaware of the requirement of CJ § 5–304. Contrary to appellant's argument, the requirements of CJ § 5–304 are not numerous or burdensome. Accordingly, we hold that the trial court did not abuse its discretion when it found, in effect, that ignorance of the law is no excuse when a party, represented by counsel, fails to give notice because he was unaware that notice was required. Under the *Madore* test, there was sufficient evidence for the court to find that appellant had failed to act with "ordinary prudence" because the appellant did not prosecute his claim " 'with that degree of diligence that an ordinary prudent person would have exercised under the same or similar circumstances.' " *Id.* at 345, 367 A.2d 54 (quoting *Hawkins, supra* ).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**