754 A.2d 379

**John R. WILLIAMS, Jr.**

v.

**Thomas Edward MAYNARD et al.**

**No. 132, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 6, 2000.

Stuart H. Arnovits (Cohen, Snyder, Eisenberg & Katzenberg, P.A., on brief), Baltimore, for petitioner.

Karen L. Federman Henry, Principal Counsel for Appeals, Division of Special Projects (Charles W. Thompson, Jr., County Atty., and Joann Robertson, Chief, Division of Litigation, on brief), Rockville, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

Under the Local Government Tort Claims Act (LGTCA), Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.), §§ 5–301 through 5–304 of the Courts and Judicial Proceedings Article, Maryland counties and other entities defined therein as "local governments" are, *inter alia,* responsible for paying, up to certain limits, judgments for compensatory damages rendered against their employees based on tortious acts committed in

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

the scope of employment. In addition, the LGTCA generally requires that "an action for unliquidated damages may not be brought against a local government or its employees" unless the plaintiff first provides written notice of his or her claim to the local government "within 180 days after the injury." *See* § 5–304.[1]

Prior to the enactment of the LGTCA, a similarly worded notice requirement had been in effect for decades as an independent statute, most recently codified as Code (1974, 1984 Repl.Vol., 1986 Cum.Supp.), § 5–306 of the Courts and Judicial Proceedings Article, but this notice requirement referred only to tort actions brought against counties and municipal corporations. It did not pertain to actions brought against employees or the numerous entities, which are neither counties nor municipal corporations, defined as local govern-

---

1. Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.), § 5–304 of the Courts and Judicial Proceedings Article, provides as follows:

"(a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

"(b) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

(i) In Baltimore City, to the City Solicitor;

(ii) In Howard County, to the County Executive; and

(iii) In Montgomery County, to the County Executive.

"(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

"(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

"(c) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."

ments for the purposes of the LGTCA.[2]  When the LGTCA was enacted by Ch. 594 of the Acts of 1987, § 5–306 was repealed.

This case presents the issue of whether the failure to comply with the LGTCA's notice requirement precludes the maintenance of a tort action against a local government when that tort action is authorized by Code (1977, 1999 Repl.Vol.),

---

2.   Section 5–301(d) of the LGTCA provides as follows:
   "(d) *Local government.*—"Local government" means:
      (1) A chartered county established under Article 25A of the Code;
      (2) A code county established under Article 25B of the Code;
      (3) A board of county commissioners established or operating under Article 25 of the Code;
      (4) Baltimore City;
      (5) A municipal corporation established or operating under Article 23A of the Code;
      (6) The Maryland–National Capital Park and Planning Commission;
      (7) The Washington Suburban Sanitary Commission;
      (8) The Northeast Maryland Waste Disposal Authority;
      (9) A community college or board of trustees for a community college established or operating under Title 16 of the Education Article, not including Baltimore City Community College;
      (10) A county public library or board of trustees of a county public library established or operating under Title 23, Subtitle 4 of the Education Article;
      (11) The Enoch Pratt Free Library or Board of Trustees of the Enoch Pratt Free Library;
      (12) The Washington County Free Library or the Board of Trustees of the Washington County Free Library;
      (13) A special taxing district;
      (14) A nonprofit community service corporation incorporated under Maryland law that is authorized to collect charges or assessments;
      (15) Housing authorities created under Article 44A of the Code;
      (16) A sanitary district, sanitary commission, metropolitan commission, or other sewer or water authority established or operating under public local law or public general law;
      (17) The Baltimore Metropolitan Council;
      (18) The Howard County Economic Development Authority;
      (19) The Howard County Mental Health Authority;
      (20) A commercial district management authority established by a county or municipal corporation if provided under local law;
      (21) The Baltimore City Police Department;  and
      (22) A regional library resource center or a cooperative library corporation established under Title 23, Subtitle 2 of the Education Article."

§ 17–107(c) of the Transportation Article and Code (1974, 1998 Repl.Vol.), § 5–524 of the Courts and Judicial Proceedings Article, which were enacted prior to the enactment of the LGTCA and which partially waive governmental immunity without expressly requiring that any notice of a claim be given to a local government.[3]

## I.

This case arose out of a traffic accident which occurred in Montgomery County on August 9, 1994, between a motor vehicle driven by the petitioner, John Williams, Jr., and a vehicle owned by Montgomery County and operated by county employee Thomas Maynard.[4] As a result of the accident, Williams's vehicle was damaged and he sustained personal injuries.

On August 16, 1994, the law firm retained by Williams contacted the claims supervisor for Consolidated Risk Management Services regarding the accident. Consolidated Risk

---

3. Code (1977, 1999 Repl.Vol.), Section 17–107(c) of the Transportation Article, provides as follows:

"(c) Defense of sovereign immunity.—An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity as described under § 5–524 of the Courts and Judicial Proceedings Article."

Code (1974, 1998 Repl.Vol.), § 5–524 of the Courts and Judicial Proceedings Article, provides as follows:

"An owner or lessee of any motor vehicle registered under Title 13 of the Transportation Article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government."

Section 17–103 of the Transportation Article requires security sufficient to provide specified minimum benefits for the payment of claims for bodily injury or death and for damage to another's property.

4. The Court of Special Appeals in this case, *Williams v. Montgomery County*, 123 Md.App. 119, 121, 716 A.2d 1100, 1101 (1998), mistakenly stated that the accident occurred in Prince George's County where Maynard resided.

Management Services was, at that time, the claims administrator for Montgomery County, which was self-insured pursuant to § 17–103 of the Transportation Article. The claims supervisor informed the representative of the law firm that the supervisor already possessed some information about the accident and requested that the law firm send a letter of representation to his attention. That same day, exactly one week after the accident, Williams's attorney wrote a letter to the claims supervisor formally notifying him of the claim. The claim was acknowledged by the claims supervisor in a return letter dated August 24, 1994.

Over a two-year period following the accident, Williams and his attorneys corresponded several times with representatives of Consolidated Risk Management Services and its successor, Trigon Administrators, Inc., regarding Williams's claim. Pursuant to the request of the claims administrators for Montgomery County, Williams provided medical reports and bills, his description of the accident, and a signed medical authorization to enable them to investigate the claim. He also submitted a notice of a workers' compensation lien. During June 1996 and subsequent months, Trigon engaged in settlement negotiations with Williams, who rejected the final settlement offer proposed by Trigon in December 1996.

In March 1997 Williams filed suit in the Circuit Court for Prince George's County against Maynard and Montgomery County, seeking $100,000 in damages allegedly caused by Maynard's negligence. Maynard, who had resided in Prince George's County at the time of the accident, had subsequently moved out of state and was never served. Montgomery County, arguing that Prince George's County was an inconvenient forum, successfully moved for transfer of the case to the Circuit Court for Montgomery County pursuant to Maryland Rule 2–327(c).

Although Williams had amended his initial complaint to allege compliance with the notice requirement of § 5–304 of the LGTCA, the County moved to dismiss the amended complaint on the ground that Williams had failed to comply with

§ 5–304. The County asserted that he had not given notice directly to the County Executive of Montgomery County within 180 days after the accident, and that he had not shown substantial compliance or good cause to excuse his failure to provide notice. The County's motion was accompanied by an affidavit from the Chief of the Division of Risk Management in the Montgomery County Office of Finance. The affidavit stated that the Division's files contained information about Williams's claim and contained correspondence from Williams or his representative. The affidavit went on to state that this correspondence had been addressed to "Consolidated Risk Management Services" which "performed claims administration work for Montgomery County" but had not been addressed to either the Division or the County Executive.

Williams responded by asserting that the notice requirement set forth in the LGTCA was not applicable to the statutory waiver of governmental immunity effected by § 17–107(c) of the Transportation Article and § 5–524 of the Courts and Judicial Proceedings Article, and that, insofar as Montgomery County was liable under § 17–107(c) and § 5–524 as owner of the vehicle driven by Maynard, the County's governmental immunity had been waived to the extent of the required security which it had provided to the Motor Vehicle Administration pursuant to § 17–103. Alternatively, Williams argued that he had substantially complied with the notice requirement of the LGTCA. Finally, Williams contended that there was good cause for failing to comply strictly with the notice requirement and that the County could not show that it had been prejudiced thereby. After holding a hearing on the County's motion to dismiss Williams's amended complaint, and considering the statements in the affidavit, the Circuit Court granted the motion to dismiss. The court ruled that Williams had failed to provide the requisite notice to Montgomery County as set forth in § 5–304 of the LGTCA, had not complied substantially with § 5–304, and had failed to show good cause for his failure to comply.

Williams appealed to the Court of Special Appeals which affirmed. *Williams v. Montgomery County*, 123 Md.App. 119,

716 A.2d 1100 (1998). Preliminarily, the Court of Special
Appeals pointed out that the trial court had in effect treated
the County's motion to dismiss as a motion for summary
judgment, and had in effect granted summary judgment pur-
suant to Maryland Rule 2–322(c).[5] The intermediate appellate
court went on to hold that § 5–304 of the LGTCA was
applicable to a motor vehicle tort action brought under § 17–
107(c) of the Transportation Article and § 5–524 of the Courts
and Judicial Proceedings Article. In response to Williams's
contention that notice to the County was not required in an
action brought under §§ 17–107(c) and 5–524, the appellate
court stressed that the "unambiguous" language of § 5–304 of
the LGTCA mandates that "an action for unliquidated dam-
ages may not be brought against a local government" unless
the requisite notice is provided, absent a showing of good
cause and a failure to show prejudice. 123 Md.App. at 130,
716 A.2d at 1105. The court noted that, unlike the claim-filing
requirement of the Maryland Tort Claims Act, Code (1984,
1999 Repl.Vol.), §§ 12–101 through 12–110 of the State Gov-
ernment Article, § 5–304 is not restricted in its applicability to
"an action under this subtitle." *See* § 12–106(b) of the State
Government Article. Accordingly, the Court of Special Ap-
peals was not persuaded that this case was analogous to those
decided by this Court and the Court of Special Appeals
regarding the inapplicability of the Maryland Tort Claim Act's
claim-filing requirement to tort actions which were not
brought under that Act. *Williams v. Montgomery County,
supra,* 123 Md.App. at 128–130, 716 A.2d at 1104–1105, citing
*State v. Harris,* 327 Md. 32, 607 A.2d 552 (1992); *Collier v.
Nesbitt,* 79 Md.App. 729, 558 A.2d 1242 (1989).

The Court of Special Appeals also held that Williams did not
substantially comply with § 5–304, reasoning that his case was

---

5. Rule 2–322(c) states in pertinent part as follows:

"... If, on a motion to dismiss for failure of the pleading to state a
claim upon which relief can be granted, matters outside the pleading
are presented to and not excluded by the court, the motion shall be
treated as one for summary judgment and disposed of as provided in
Rule 2–501, and all parties shall be given reasonable opportunity to
present all material made pertinent to such a motion by Rule 2–501."

similar to that of the plaintiffs in *Loewinger v. Prince George's County*, 266 Md. 316, 292 A.2d 67 (1972), who, according to the Court's opinion, did not substantially comply with the notice requirement despite their prompt notification of their claim to the alleged tortfeasor county agency and its insurer. Finally, the intermediate appellate court held that Williams had failed to show good cause justifying his lack of compliance.

Williams timely filed a petition for writ of certiorari which we granted. *Williams v. Maynard*, 352 Md. 310, 721 A.2d 989 (1998). The certiorari petition raised a single question for review by this Court, namely whether the Court of Special Appeals erred by holding that the notice requirement in the Local Government Tort Claims Act was applicable to an action against a local government authorized by § 17–107(c) of the Transportation Article and § 5–524 of the Courts and Judicial Proceedings Article.

In light of the single question presented by Williams, it should be emphasized what is not before us in this case. First, no issue has been raised as to whether Williams actually complied with the notice requirement of § 5–304 of the LGTCA.[6] Moreover, although raised below, no issue has been raised by Williams before this Court as to whether notice

---

**6.** As quoted in full *supra* note 1, § 5–304 states that, with the exception of Anne Arundel, Baltimore, Harford, and Prince George's Counties, for which notice must be given only to the "county solicitor or county attorney," notice of actions to be brought against local governments may be given

"to the county commissioner, county council, or corporate authorities of a defendant local government, or:
  (i) In Baltimore City, to the City Solicitor;
  (ii) In Howard County, to the County Executive; and
  (iii) In Montgomery County, to the County Executive."

Consequently, in Montgomery County, notice to the County Executive is simply an alternative to notice to the "county council, or corporate authorities." The language in the former notice statute was virtually the same as in § 5–304, except that "corporate authorities of a defendant local government" read "corporate authorities of a defendant municipal corporation." As various entities which have no County Executive, Council, or Commissioners are deemed local governments under the LGTCA, the amended phrase "corporate authorities" was

given to Consolidated Risk Management Services constituted substantial compliance.[7]  Finally, while also raised below, no issue was raised by Williams in this Court under subsection (c) of § 5–304 pertaining to waiver of the notice requirement for good cause.

## II.

Williams argues that this Court's decision in *State v. Harris, supra,* regarding the relationship between the Maryland Tort Claims Act and the motor vehicle statute now contained in §§ 17–107(c) and 5–524, should control the case at bar.  Montgomery County contends that the plain language of § 5–304 of the LGTCA reflects the General Assembly's intent to apply the notice requirement to all tort actions brought against local governments or their employees, regardless of the bases for such actions.  In addition, the County argues that a comparison of the Maryland Tort Claims Act with the LGTCA shows that the claim-filing requirement of the former is not analogous to the notice section of the LGTCA.

## A.

In determining whether the LGTCA's notice requirement applies to an action brought under § 17–107(c) of the Trans-

---

obviously intended to have a broad meaning.  No issue has been raised in this case as to whether notice was actually given to appropriate "corporate authorities" of Montgomery County.  Furthermore, no issue has been raised as to whether notice was given to an entity acting as the "agent" for the County Executive, and whether notice to the "agent" would constitute notice to the principal under the circumstances.

7.  In its holding that Williams's notice given to Consolidated Risk Management Services did not constitute substantial compliance, the Court of Special Appeals relied on *Loewinger v. Prince George's County,* 266 Md. 316, 292 A.2d 67 (1972).  In *Loewinger,* this Court held that the plaintiffs did not substantially comply with the former notice statute because they failed to give direct notice to the county commissioners or council.  The plaintiffs had alleged that their claim against a county hospital for negligence was presented almost immediately to both hospital personnel and the county hospital's insurance carrier, and that both the hospital and the insurance carrier investigated the claim. Although a reexamination of the holding in *Loewinger* may well be appropriate, Williams has not asked us to do so in this case.

portation Article, and § 5–524 of the Courts and Judicial Proceedings Article, it will first be helpful to summarize the development of the notice requirement up to and including the enactment of the LGTCA.

This Court, in *Bartens v. City of Baltimore*, 293 Md. 620, 446 A.2d 1136 (1982), reviewed extensively the history of the notice requirement through all of its major changes prior to enactment of the LGTCA. The Court observed that, although the notice statute had "undergone frequent amendments . . . . [t]he changes have not involved the scope of actions to which the act pertains." *Bartens*, 293 Md. at 625, 446 A.2d at 1138. Moreover, the "notice provided by the statute" was "substantially unchanged through its various amendments" insofar as it "require[d] the claimant to relate the time, place, and circumstances of the alleged injury . . . ." 293 Md. at 626, 446 A.2d at 1138. Instead, the amendments involved such matters as "the number of municipalities and counties covered" and "the length of notice required." 293 Md. at 625, 446 A.2d at 1138. For example, in 1941 the notice statute was first enacted as a public local law applicable only to Montgomery County. This was repealed in 1943 by a public general law which made the notice requirement applicable to two additional counties and to municipal corporations. By Ch. 519 of the Acts of 1972, the General Assembly extended the notice statute to all counties and municipal corporations in the State and imposed a uniform time of 180 days within which notice had to be given. By the same Act, the General Assembly added the "escape clause" to the notice statute, whereby a plaintiff who did not comply with the notice requirement could nevertheless maintain his or her action, provided that the plaintiff could show good cause and that the defendant could not show that it had been prejudiced by the lack of notice.

This Court has stated that the purpose of requiring notice was (*Bartens*, 293 Md. at 626, 446 A.2d at 1138–1139)

"to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could

conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' *Jackson v. Board of County Commissioners,* 233 Md. 164, 167, 195 A.2d 693, 695 (1963)."

Accordingly, the Court has held that the purpose of the notice statute was fulfilled by substantial compliance with the statutory requirements. *See Grubbs v. Prince George's County,* 267 Md. 318, 325, 297 A.2d 754, 758 (1972); *Jackson v. Board of County Commissioners,* 233 Md. 164, 167–168, 195 A.2d 693, 695 (1963). *But cf. Loewinger v. Prince George's County, supra,* 266 Md. 316, 292 A.2d 67.

This Court has applied the notice statute broadly to a variety of tort actions, including actions authorized by a statutory waiver of governmental immunity. For example, in *Cotham and Maldonado v. Board,* 260 Md. 556, 273 A.2d 115 (1971), the Court applied the notice statute to a cause of action in tort brought against Prince George's County as owner and operator of a hospital. The action was based on a public general law which had been enacted subsequent to the notice statute, and which this Court construed as partially waiving the governmental immunity of county-operated hospitals. *See also Grubbs v. Prince George's County, supra,* 267 Md. 318, 297 A.2d 754. Thus, a decade before enactment of § 17–107(c) of the Transportation Article and § 5–524 of the Courts and Judicial Proceedings Article, and 16 years before enactment of the LGTCA, this Court had applied the requirements of the notice statute to tort actions brought against counties and municipal corporations regardless of whether these local governments were liable under state common law or by virtue of a statutory waiver of governmental immunity.

When the General Assembly enacted the LGTCA by Ch. 594 of the Acts of 1987, it also repealed the most recent version of the notice statute, Code (1974, 1984 Repl.Vol., 1986 Supp.), § 5–306 of the Courts and Judicial Proceedings Article. Section 5–304 of the LGTCA, however, reenacted, with modifications, the requirements of the repealed notice statute.

Virtually the same notice requirements are set forth, but, instead of applying to actions "brought against a county or municipal corporation," the requirements are applied to actions "brought against a local government or its employees."

The plain language of § 5–304 of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments. Moreover, the legislative history shows that, from the first draft of the LGTCA by a group of county attorneys in 1985 through its enactment by the General Assembly in 1987, § 5–304 was intended to extend the scope of the existing notice statute.

The County Attorneys Strategy Workgroup, which in 1985 drafted the proposed LGTCA, described the notice section and provided a rationale for extending the notice requirement as follows (*Report of the Governor's Task Force to Study Liability Insurance*, at 58, Appendix C–4 (December 1985)):

> "The six-month notice condition for filing suit against a local government is extended to its employees. (Since the Act renders [a] local government liable for judgments against its employees, it makes sense to extend the notice requirements presently applicable to most local governments to their employees.)"

Although the General Assembly made several substantive amendments to other sections of the proposed LGTCA before enacting the legislation in 1987, the Legislature made no substantive amendments to the notice section. In addition, the bill files maintained by the Department of Legislative Services contain no indication that the General Assembly intended § 5–304 to mean other than what the legislation's sponsors proposed or the plain language of the enacted statute suggests. Thus, what is today § 5–304 is substantively identical to the draft proposed by the LGTCA's sponsors in 1985. Moreover, while § 5–304 extends the scope of the notice requirement to actions brought against all entities deemed local governments under the LGTCA, and to the actions brought against local governmental employees for which the LGTCA makes local governments liable to provide a legal

defense and to pay judgments for compensatory damages, it fully encompasses the scope of the former notice statute.

### B.

In arguing that *State v. Harris, supra,* 327 Md. 32, 607 A.2d 552, is controlling precedent, Williams fails to recognize a significant difference between *Harris* and the case at bar. *Harris* concerned the relationship between the motor vehicle statute, now codified as §§ 17–107(c) and 5–524, and the Maryland Tort Claims Act. That relationship differs markedly from the relationship between the motor vehicle statute and the LGTCA.

In *Harris,* the plaintiff filed a complaint against the State just a few days before the statute of limitations period expired, alleging that he sustained personal injuries and property damage resulting from a motor vehicle accident which was caused by a State employee who was negligently operating a State-owned vehicle. The Circuit Court for Baltimore City dismissed the complaint for failure to comply with the claim-filing requirements of the Maryland Tort Claims Act, which mandates that a claimant must first submit a claim to the State Treasurer and receive a final decision on the claim prior to filing suit against the State. On appeal, Harris argued that his action was not based on the Maryland Tort Claims Act but on what is now codified as §§ 17–107(c) and 5–524, which partially waive the sovereign immunity of the State as owner or lessee of a motor vehicle without explicitly requiring the filing of a claim as a prerequisite to maintaining a tort action.[8]

In determining whether the claim-filing requirement of the Maryland Tort Claims Act applied to an action brought under the motor vehicle statute, this Court in *Harris* first emphasized that the language of the State Tort Claims Act "provides that 'an action may not be instituted *pursuant to this subtitle* unless the claimant has first presented the claim in writing to

---

8. What is now § 17–107(c) of the Transportation Article and § 5–524 of the Courts and Judicial Proceedings Article were originally enacted by Ch. 250 of the Acts of 1981 and codified as Code (1977, 1981 Cum. Supp.), § 17–107(b) of the Transportation Article.

the State Treasurer or his designee and the claim has been finally denied.'" *Harris*, 327 Md. at 35, 607 A.2d at 553.[9] The Court also noted that, in the Maryland Tort Claims Act, the General Assembly stated its intention that the Act "'be interpreted broadly to assure that injured parties have a remedy.'" *Harris*, 327 Md. at 35, 607 A.2d at 554. In addition, the *Harris* opinion relied upon the Maryland Tort Claims Act's language which "expressly provides that its provisions are 'not in limitation of any other law waiving the sovereign immunity of the State.'" 327 Md. at 40, 607 A.2d at 556.[10]

The *Harris* Court reasoned that, although the Maryland Tort Claims Act and then § 17–107(b) of the Transportation Article both created causes of action against the State for motor vehicle torts, the causes of action were different and, thus, appropriately had different requirements. A plaintiff under the Maryland Tort Claims Act benefitted from a broader waiver of sovereign immunity than that effectuated by § 17–107(b). Under the Tort Claims Act, the State's liability was capped at an amount potentially higher than the security required by the Motor Vehicle Administration. *Harris*, 327 Md. at 40, 607 A.2d at 556. In examining the legislative histories of the Maryland Tort Claims Act and then § 17–107(b), the *Harris* Court observed that, although both statutes were enacted by the General Assembly in 1981, § 17–107(b) was the prior statute and went into effect a full year before

---

**9.** By Chapter 284 of the Acts of 1984, the General Assembly slightly changed the language of this section to provide as follows: "A claimant may not institute an action under this subtitle...." *See* § 12–106(b) of the State Government Article. Note that this section still specifies that the claim-filing requirement applies to "an action" authorized by "this subtitle."

**10.** Ch. 284 of the Acts of 1984 revised these sections slightly, so that § 12–102 now provides that the Act "shall be construed broadly, to ensure that injured parties have a remedy," and § 12–103 states, in relevant part, that this "subtitle does not ... limit any other law that: (i) waives the sovereign immunity of the State or the units of the State government in tort; or (ii) authorizes the State or its units to have insurance for tortious conduct...."

the Tort Claims Act. The Court determined that the Maryland Tort Claims Act did not repeal § 17–107(b) either expressly or by implication, and held that the two statutes "may be construed in harmony with each other" by regarding them as creating causes of action which are wholly separate and distinct. *Harris*, 327 Md. at 41, 607 A.2d at 557. The Court concluded that the Maryland Tort Claims Act's claim-filing requirement applied to a motor vehicle tort action brought under that Act, but that this requirement had no application to a motor vehicle tort action brought under § 17–107(b).

As explained previously, the language and legislative history of § 5–304 of the LGTCA indicate that the LGTCA's notice requirement is applicable to actions authorized by other statutory waivers of governmental immunity such as the motor vehicle statute. The legislative history shows that the LGTCA incorporated, with modifications not relevant to the issue before us, the longstanding notice requirement which had existed since 1941. This notice requirement had been applied to tort actions pursuant to statutory waivers of governmental immunity like that contained in the motor vehicle statute. Furthermore, the language of § 5–304(a) explicitly states that the notice requirement applies to any action for unliquidated damages "brought against a local government." The only actions which can be brought directly against a local government are those authorized by law which is separate and distinct from the LGTCA. This contrasts with the language in § 12–106(b) of the Maryland Tort Claims Act which states that a "claimant may not institute an action *under this subtitle* " unless he or she first submits a claim to the State. (Emphasis supplied). As the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments, the language of § 5–304 quoted above could have no effect if the notice requirement did not extend to actions authorized by law other than the LGTCA, *e.g.* by statutes such as the motor vehicle statute in §§ 17–107(c) and 5–524.

In sum, the relationship between the Maryland Tort Claims Act and other statutes waiving the State's sovereign immunity

is quite different from the relationship between the LGTCA and statutes waiving local governmental immunity. Because of the difference between the two tort claims acts, the decision in *State v. Harris, supra,* 327 Md. 32, 607 A.2d 552, has no application to the present case.

The longstanding notice requirement pertaining to tort actions against local governments, currently set forth in § 5–304 of the LGTCA, applies to an action for unliquidated damages brought against Montgomery County pursuant to § 17–107(c) of the Transportation Article and § 5–524 of the Courts and Judicial Proceedings Article.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*