HOLLANDER, J.
 

 Nelly Rios, appellant, Parent and Next Friend of her son, Luis Rios, Jr.,
 
 [1]
 
 instituted a medical malpractice suit in July 2001 against Montgomery County (the “County”) and Richard
 
 *465
 
 Footer, M.D., appellees, to recover for injuries sustained by Luis at the time of his birth on December 31, 1991. Dr. Footer, an obstetrician, was a County employee when he delivered Luis. Accordingly, appellant filed suit pursuant to the Local Government Tort Claims Act (the “LGTCA” or “Act”), Md.Code (1973, 2002 RepLVoL), § 5-301 et seq. of the Courts and Judicial Proceedings Article (“C.J.”).
 

 Although Luis was born in 1991, appellant did not file the notice of claim required by C.J. § 5-304 until April 2001. Therefore, appellees moved to dismiss the suit. Upon finding that appellant lacked good cause in filing a belated notice of claim, the Circuit Court for Montgomery County dismissed the case. This appeal followed, in which appellant poses the following two issues:
 

 I. Whether the trial court erred in finding that Appellant had not shown good cause for waiving the requirement of timely notice under Section 5-304(c) of the Local Government Tort Claims Act[.]
 

 II. Whether the 180-day notice requirement of Section 5-304(a) of the Local Government Tort Claims Act is unconstitutional as applied to minors[.]
 

 For the reasons that follow, we shall affirm.
 

 FACTUAL
 
 SUMMARY
 
 [2]
 

 Nelly Rios, a native of Bolivia, entered the United States in 1983. She subsequently returned to her native Bolivia, and then re-entered the United States in 1987 with her husband, Luis Rios.
 
 [3]
 
 Mr. and Ms. Rios are the parents of Luis. They separated before Luis was two years old and are now divorced.
 

 On June 17, 1991, a friend referred Ms. Rios to a clinic in Rockville to obtain prenatal care. Unknown to appellant, the
 
 *466
 
 clinic was operated by the Montgomery County Health Department.
 

 While at the clinic on June 17,1991, Ms. Rios signed a form, written in Spanish, titled
 
 “Maternity Programa De Maternidad Prueba De Domicilio.”
 
 The words “Montgomery County Government” appear in large letters at the top of the form, in English, along with the County seal. The words “Department of Health, Division of Family Health Services” appear in English at the bottom of the document, along with the address. The English version of the form, included in the record, is titled: “Maternity Program Proof of Residency.” According to the English version of the form, by signing the document, appellant represented that she was a resident of Montgomery County. The form also directs the “person requesting service” to “report all changes in ... residency (within 14 days) to the Montgomery County Health Department.” In addition, Ms. Rios signed a document called a “Face Sheet.” It is written in English, with the words “Montgomery County” at the top.
 

 In 1991, Dr. Footer worked part-time for Montgomery County through his participation in a program known as “Project Delivery.” On December 31, 1991, while appellant was in labor at Holy Cross Hospital of Silver Spring, Inc. (“Holy Cross” or the “Hospital”), Dr. Footer was on call. Although Dr. Footer had never previously met Ms. Rios, and never provided prenatal care to her at the clinic, he delivered Luis on that date. Appellant paid the Hospital, not the County, for the costs associated with Luis’s birth.
 

 Luis weighed ten pounds, five ounces at birth, and his size apparently was a complication in delivery. During labor, Luis’s anterior shoulder became lodged. Consequently, Dr. Footer used forceps to deliver Luis, which resulted in a sulcar tear
 
 [4]
 
 and a fourth degree tear of the brachial plexus.
 
 [5]
 
 Luis
 
 *467
 
 now suffers with Erb’s palsy,
 
 [6]
 
 a permanent injury.
 

 Although it was known at birth that Luis was injured, Ms. Rios did not provide notice of her malpractice claim to the County until almost a decade later, on April 6, 2001. On May 11, 2001, Ms. Rios filed her claim with the Maryland Health Claims Arbitration Office. After arbitration was waived, appellant filed a negligence suit against Dr. Footer and the County on July 24, 2001, seeking to recover for Luis’s injuries.
 
 [7]
 

 Ms. Rios was deposed through a Spanish interpreter on June 6, 2002. She testified that she spoke very little English in 1991, and did not know how to read English when she went to the clinic on June 17, 1991. However, she acknowledged that the “nurses spoke Spanish” and helped her to complete the forms and to communicate with the doctor.
 

 Ms. Rios estimated that she went to the clinic about twelve times, and paid $8 per visit. But, she claimed that she “did not know that it was a clinic run by the county.” Ms. Rios stated: “I thought it was just a public clinic....” Nor did Ms. Rios know that Dr. Footer was a County employee. The following deposition testimony is pertinent:
 

 [COUNSEL FOR APPELLEES][
 
 8
 
 ]: You indicated that a friend of yours told you to go to the clinic at 50 Monroe Street?
 

 
 *468
 
 [APPELLANT]: Yes.
 

 [COUNSEL FOR APPELLEES]: You indicated that she [i.e., appellant’s friend] said that if you went there, they could help. What did they say they could do for you?
 

 [APPELLANT]: Because I was told to have a baby and to have—to give childbirth in the hospital would cost about $5,000, and I did not have those resources, sufficient resources to pay that bill, so I was told there at the clinic that they could do that for me for $1,500.
 

 [COUNSEL FOR APPELLEES]: And it was your understanding that this clinic was a clinic that was run by Montgomery County, Maryland?
 

 [APPELLANT]: No. I just knew it was—I was under the impression that it was a clinic that would help people, but I didn’t know anything more about it.
 

 [COUNSEL FOR APPELLEES]: Did you know who ran the clinic?
 

 [APPELLANT]: No.
 

 [COUNSEL FOR APPELLEES]: Did you know anything about the clinic other than you just go there and you get help?
 

 [APPELLANT]: Just that I would have to pay less, and that’s why I want there.
 

 * * *
 

 [COUNSEL FOR APPELLEES]: Was it your understanding that the clinic was not run by Montgomery County?
 

 
 *469
 
 [APPELLANT]: No. I did not know that it was a clinic run by the county. I thought it was just a public clinic, and that’s why you pay the $1,500.
 

 [COUNSEL FOR APPELLEES]: So it was your understanding that it was a public clinic; is that right?
 

 [APPELLANT]: Yes, but one where you had to pay, but I did not know it was run by the county.
 

 [COUNSEL FOR APPELLEES]: Did you understand that it was run by the government or a government?
 

 [APPELLANT]: No, I never knew that. I would go once a month for my appointments. I would just sign in, have my appointment, and go back.
 

 [COUNSEL FOR APPELLEES]: At any point in time did you ask any of the individuals there who they worked for?
 

 [APPELLANT]: No, never. I never would ask anything. I would just go in and come back out.
 

 [COUNSEL FOR APPELLEES]: After your son was born did you ever ask any of the individuals at the clinic who they worked for?
 

 [APPELLANT]: No, never. I never have asked anybody there.
 

 * * *
 

 [COUNSEL FOR APPELLEES]: You also understood when you signed up at the clinic that the clinic was going to provide—was going to have someone deliver your baby; correct?
 

 [APPELLANT]: Yes. I thought it would be the same doctor that would give me the checkups.
 

 Ms. Rios “assume[d]” that her doctor from the clinic would supervise her delivery. At the time of Luis’s delivery, she thought she recognized Dr. Footer as the same doctor she had previously seen at the clinic. Appellant noted, however, that she was “under such strong pain” during labor.
 

 Ms. Rios recalled that, by six months of age, Luis was still unable to move his hand, and her husband felt “helpless,”
 
 *470
 
 “very frustrated” and “desperate.” She acknowledged that, before Luis was a year old, her husband saw a lawyer to discuss the matter, but she had “no idea who that lawyer would be.”
 

 At his deposition, Dr. Footer recalled that he learned of Luis’s size “at the time of delivery,” and acknowledged that he was a bit “surprised” by the baby’s size. He also recalled that, after the delivery, he discussed with Ms. Rios that “the baby had nerve damage” that required further “evaluation.” Dr. Footer said he told Ms. Rios “that we would have to wait and see whether this resolved totally or not.” He could not recall, however, whether he discussed with Ms. Rios the risks of a forceps delivery. Nor did Dr. Footer know whether Ms. Rios was aware that he was a County employee. The following excerpt is pertinent:
 

 [COUNSEL FOR APPELLEES]: Do you recall ever telling Mrs. Rios that you were an employee of Montgomery County?
 

 [DR. FOOTER]: No.
 

 [COUNSEL FOR APPELLEES]: Do you know whether or not she knew that you were an employee of the county at the time of her delivery?
 

 [DR. FOOTER]: I don’t know.
 

 [COUNSEL FOR APPELLEES]: Have you ever seen any papers or anything that could document an understanding by the patient that she was being delivered by a county employee?
 

 [DR. FOOTER]: I honestly don’t know whether that exists. I have never seen anything.
 

 On September 23, 2002, Ms. Rios filed a “Motion to Waive Requirement of Timely Notice Under the Local Government Tort Claims Act and to Permit Action to Proceed” (the “Motion”). She claimed that, “[p]rior to consulting -with her current attorney, she did not know, and had no reason to know,” that Dr. Footer was an employee of the County when he delivered Luis. Ms. Rios also asserted that the defendants would not be prejudiced if her Motion were granted, because
 
 *471
 
 the Hospital records regarding Luis’s birth are available, and Dr. Footer and Dr. David Solberg, the obstetrical resident who participated in the delivery, “are still available to testify.” At the motion hearing on January 29, 2003, appellant urged the court to find good cause to justify her belated notice, based on the concept of “excusable neglect or mistake.”
 

 The court (Woodward, J.) determined that, even if Ms. Rios lacked actual knowledge that the clinic was a County facility and that Dr. Footer worked for the County, she had “an affirmative duty to inquire as to the legal identity of the Defendant.” In its view, even a “minimum inquiry” would have led appellant to discover the employment status of Dr. Footer. In a thorough and well reasoned oral opinion, the court said:
 

 It seems to me that the only category that the facts in this case focus on is excusable neglect or mistake. The good cause or the excusable neglect or mistake in this case is the fact that the Plaintiff did not know that the defendant doctor was an employee of the County at the time that the delivery was performed.
 

 I think the Defendant, for the purpose of this motion, has conceded that the Plaintiff did not know that; nobody told her that, the doctor didn’t tell her that, the County didn’t tell her that, she didn’t have that actual knowledge.
 

 The Plaintiff further alleges that the Plaintiff did not have reason to know that the Defendant was an employee of the County. That fact is vigorously disputed by the County.
 

 Insofar as whether the Plaintiffs lack of knowledge of the Defendant’s employment status is good cause has been addressed in a different context in the
 
 Gould
 
 case,
 
 Gould v. U.S. Department of Health and Human Services
 
 [905 F.2d 738 (4th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 666 (1991) ]. [Appellant] is correct, this is a different issue because it’s the Federal Tort Claims Act, and it deals with the statute of limitations. But that case uses, however, a due diligence standard when discussing the conduct of the Plaintiff in that case....
 

 
 *472
 
 Indeed, there was nothing to indicate in that case that the defendant doctor had any relationship to the federal government, because all the treatment was performed at a family health care corporation in Anne Arundel County, ...
 

 But the court goes on to a lot of discussion about due diligence in investigating a claim. They indicated that as a part of due diligence, the Plaintiff had an affirmative duty to inquire as to the legal identity of the Defendant. The burden is on the Plaintiff to discover the employment status of the tort feasor and to bring a suit within the applicable limitations period.
 

 They did indicate in this case that if there was a reasonable investigation and that information was undiscoverable, then that could be a reason in that case for tolling the statute of limitations.
 

 The standard, though, as I indicated was one of due diligence. And in that case, in the
 
 Gould
 
 case, too the plaintiff never investigated the employment status of the defendant until after the statute had run, or at least to put it the way the court stated, is there was no evidence that there was any investigation prior to the running of the statute of limitations....
 

 * * *
 

 The problem is that for a period of over eight and a half years, there’s no evidence that the Plaintiff did anything to investigate or prosecute her claim. This was as [sic] situation where it was a patent injury, it was not a latent injury; she was aware of that injury, she was aware of the circumstances surrounding the occurrence of the injury. She was aware that her husband wanted to talk to a lawyer and may have talked to a lawyer about what had happened to their child.
 

 So there was clear notice to her that there was a potential legal claim against the doctors for the injuries sustained by her child. Yet there’s no evidence that anything was done.
 

 
 *473
 
 We don’t know what an investigation would have revealed ... we simply don’t know that because it was never accomplished; it was never done.
 

 The court also considered whether appellant “was on some kind of inquiry notice about whether the doctor was an employee of the County.” It was satisfied that Ms. Rios had inquiry notice of the County’s involvement. The court said:
 

 She did go to a County health clinic for her prenatal care, she did sign a document that indicated that, a proof of residency form on a Montgomery County Health Department form; it was in Spanish, it did have the logo of Montgomery County on it, did have the Montgomery County Health Department listed on it. She did believe that the doctor that she’d seen at the Health Department was the same doctor that delivered her child, albeit that that has turned out not to be true, but that was her belief, according to her testimony.
 

 The clinic is run by the County, exclusively by the County, has the County logo on it, so there seems to me to be evidence here over and above the actual knowledge that would put a reasonable person on notice that somehow the County would be involved in this case, as the employer.
 

 And she went to this clinic because she couldn’t afford the delivery, the regular cost of delivery; and that was another indication that the County or some other entity was involved in the delivery.
 

 So I think from the facts of this case, while she may not have actually known the employment status, she certainly had reasonable indication that the County was involved, and potentially responsible for what had happened in the course of the delivery.
 

 (Emphasis added).
 

 Concluding that appellant did not establish good cause, the court dismissed the case. It said:
 

 I recognize that I have discretion in this case, and I have pondered long and hard over this. I have searched diligently for what the law requires me to find, and that’s good
 
 *474
 
 cause. And if I could find it, I would find it. But I can’t get past the fact that
 
 there simply was no evidence of investigation, no evidence of prosecution of this claim for over eight and a half years after the injury occurred.
 
 The requirement of the notice is 180 days.
 

 She had an obligation under the law to make that investigation. And if that investigation had not disclosed employment, if that investigation had been reasonably conducted and there was a delay in discovery of the employment status, then I think it would be a whole different picture. But that investigation simply was not done, and I think the standard for good cause requires me to find or determine whether there was a prosecution of the claim with the degree of diligence of an ordinary prudent person.
 
 I think an ordinary prudent person would have done some investigation and none was done for over eight and a half years, according to the evidence in the record.
 

 I just simply cannot find good cause on the record in this case. And accordingly, and for these reasons and reluctantly, the Court will deny the motion to waive the requirement of timely notice.
 

 (Emphasis added).
 

 Appellant filed a Motion for Reconsideration on February 28, 2003, in which she again asked the court to reconsider whether good cause' excused her failure to timely notify the County of the claim. In addition, she asserted, for the first time, that the notice requirement was unconstitutional as applied to minors. The court denied the motion on April 2, 2003, without a hearing.
 

 DISCUSSION
 

 I.
 

 The court dismissed the case based on appellant’s failure to satisfy the notice requirement of the LGTCA. Therefore, before we address the parties’ contentions, it is helpful to review the Act.
 

 
 *475
 
 As the Court of Appeals explained in
 
 Housing Auth. v. Bennett,
 
 359 Md. 356, 358, 754 A.2d 367 (2000), “[u]ntil the twentieth century, local governments generally had no immunity under Maryland common law in either tort or in contract actions.” In the early twentieth century, however, the Court of Appeals recognized that local governments had “immunity in certain types of tort actions based on activity categorized as ‘governmental’ but had no immunity in tort actions based on activity categorized as ‘private’ or ‘corporate’ or ‘proprietary.’ ”
 
 Id.
 
 at 359, 754 A.2d 367. Thus, “shaped largely by judicial decisions and by statutes dealing with specific agencies or specific matters,”
 
 id.
 
 at 358, 754 A.2d 367, local governments enjoyed limited immunity from tort liability for “non-constitutional torts based on activity categorized as ‘governmental.’ ”
 
 Id.
 
 at 361, 754 A.2d 367.
 
 See DiPino v. Davis,
 
 354 Md. 18, 47, 729 A.2d 354 (1999) (“A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity.”);
 
 Baltimore Police Department v. Cherkes,
 
 140 Md.App. 282, 314, 780 A.2d 410 (2001)(stating that “local governmental bodies have common law governmental immunity only for acts that are governmental, and not for private or proprietary acts, and they do not have immunity from liability for State constitutional torts.”);
 
 see also Harford County v. Town of Bel Air,
 
 348 Md. 363, 373, 704 A.2d 421 (1998);
 
 Ashton v. Brown,
 
 339 Md. 70, 101, 660 A.2d 447 (1995). Although the governmental immunity enjoyed by counties and municipalities “derived from the State’s sovereign immunity,” it was “much narrower than the immunity of the State.”
 
 Board of Educ. v. Town of Riverdale,
 
 320 Md. 384, 390, 578 A.2d 207 (1990).
 

 The local government immunity landscape changed in 1987, with the enactment of the LGTCA, codified at C.J. §§ 5-301 through 5-304.
 
 See
 
 § 1, Ch. 594 of the Acts of 1987. With the enactment of the LGTCA, the Legislature sought to provide “a remedy for those injured by local government
 
 *476
 
 officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials’ acts.”
 
 Ashton v. Brown,
 
 339 Md. at 108, 660 A.2d 447;
 
 see Faulk v. Ewing,
 
 371 Md. 284, 298, 808 A.2d 1262 (2002);
 
 Moore v. Norouzi,
 
 371 Md. 154, 165-66, 807 A.2d 632 (2002).
 

 Nevertheless, “the LGTCA does not waive governmental immunity or otherwise authorize any [direct] actions directly against local governments.... ”
 
 Williams v. Maynard,
 
 359 Md. 379, 394, 754 A.2d 379 (2000);
 
 see Cherkes,
 
 140 Md.App. at 318, 780 A.2d 410;
 
 Nam v. Montgomery County,
 
 127 Md.App. 172, 183-84, 732 A.2d 356 (1999);
 
 Williams v. Prince George’s County,
 
 112 Md.App. 526, 552, 685 A.2d 884 (1996);
 
 Khawaja v. City of Rockville,
 
 89 Md.App. 314, 325, 598 A.2d 489 (1991). Pursuant to C.J. § 5-303, local governments are responsible for payment of any judgments. As Judge Eldridge explained for the Court in
 
 Bennett,
 
 359 Md. at 357-58, 754 A.2d 367, the Act
 

 makes all entities defined therein as “local governments” responsible for the legal defense of their employees, and liable for judgments for compensatory damages rendered against their employees, in suits against the employees based on tortious acts committed in the scope of their governmental employment. In addition, the LGTCA prohibits local governments from asserting the defense of governmental immunity to avoid this responsibility and liability, and it establishes monetary caps per individual claim and occurrence on the recoverable damages.
 

 See also Cherkes,
 
 140 Md.App. at 317, 780 A.2d 410 (summarizing the significant features of the Act).
 

 In order to pursue a claim for unliquidated damages pursuant to the LGTCA, the claimant must comply with the notice requirement set forth in C.J. § 5-304. It requires a potential plaintiff to notify potential local government defendants of impending claims within 180 days of the injury. Timeliness is only one feature of the provision. C.J. § 5-304 states:
 

 
 *477
 
 § 5-304. Actions for unliquidated damages.
 

 (a)
 
 Notice
 
 Required.—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.
 

 (b)
 
 Manner of giving
 
 notice.—
 

 (3) The notice shall be in writing and shall state the time, place, and cause of the injury.
 

 (c)
 
 Waiver of notice
 
 requirement.—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.
 

 As the Court explained in
 
 Moore v. Norouzi,
 
 371 Md. at 167-68, 807 A.2d 632, the Act’s notice requirement is designed
 

 “to protect the ... counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the ... county would be apprised of its possible liability at a time when it could conduct its own investigation,
 
 i.e.,
 
 while the evidence was still fresh and the recollection of the witnesses was undiminished by time, ‘sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.’ ”
 

 (Citations omitted). Among other things, the notice provision enables a governmental defendant to budget properly, to set aside appropriate reserves, and to account for payment of claims under complex accounting rules and tax statutes.
 

 Interestingly, the notice requirement did not originate with the Act. When the General Assembly enacted the LGTCA, it repealed the version of the notice statute then codified in Code (1974, 1984 Repl.Vol., 1986 Supp.), C.J. § 5-306. The LGTCA merely recodified, with modifications, the notice requirement that previously “existed under the prior law which was re
 
 *478
 
 pealed by Ch. 594.”
 
 Bennett,
 
 359 Md. at 363, 754 A.2d 367. The change was largely semantic. Instead of applying to actions “brought against a county or municipal corporation,” the new notice requirement applies to actions “brought against a local government or its employees.”
 
 Williams,
 
 359 Md. at 391, 754 A.2d 379.
 

 In
 
 Bartens v. Mayor & City Council of Baltimore,
 
 293 Md. 620, 446 A.2d 1136 (1982), and later in
 
 Williams v. Maynard,
 
 359 Md. 379, 754 A.2d 379, the Court traced the history of the notice requirement that is now found in the LGTCA, and showed that the notice required by the Act is “ ‘substantially unchanged through its various amendments’ insofar as it ‘require[d] the claimant to relate the time, place, and circumstances of the alleged injury....’”
 
 Williams,
 
 359 Md. at 389, 754 A.2d 379 (quoting
 
 Bartens,
 
 293 Md. at 626, 446 A.2d 1136). Over the years, the amendments to the notice requirement merely
 

 involved such matters as “the number of municipalities and counties covered” and “the length of notice required.”
 
 [Bartens,]
 
 293 Md. at 625, 446 A.2d at 1138.... By Ch. 519 of the Acts of 1972, the General Assembly extended the notice statute to all counties and municipal corporations in the State and imposed a uniform time of 180 days within which notice had to be given. By the same Act, the General Assembly added the “escape clause” to the notice statute, whereby a plaintiff who did not comply with the notice requirement could nevertheless maintain his or her action, provided that the plaintiff could show good cause and that the defendant could not show that it had been prejudiced by the lack of notice.
 

 Williams,
 
 359 Md. at 389, 754 A.2d 379.
 

 Thus, the importance of timely and adequate notice long precedes the adoption of the Act; the decisional law cited above highlights that the notice requirement is a central feature of the LGTCA. As Judge Eldridge observed for the Court in
 
 Williams,
 
 359 Md. at 390, 754 A.2d 379, some sixteen years prior to the passage of the LGTCA, the “Court had
 
 *479
 
 applied the requirements of the notice statute to tort actions brought against counties and municipal corporations regardless of whether these local governments were liable under state common law or by virtue of a statutory waiver of governmental immunity.”
 

 Courts must construe the LGTCA’s notice requirement consistent with its plain meaning, and consistent -with its long history. The
 
 Williams
 
 Court said:
 

 The plain language of § 5-304 of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments.
 

 Although the General Assembly made several substantive amendments to other sections of the proposed LGTCA before enacting the legislation in 1987, the Legislature made no substantive amendments to the notice section [proposed by the County Attorneys Strategy Workshop, which drafted the proposed Act in 1985], In addition, the bill files maintained by the Department of Legislative Services contain
 
 m indication that the General Assembly intended § 5-SOU to mean other than what the legislation’s sponsors proposed or the plain language of the enacted statute suggests.
 
 Thus, what is today § 5-304 is substantively identical to the draft proposed by the LGTCA’s sponsors in 1985. Moreover, while § 5-304 extends the scope of the notice requirement to actions brought against all entities deemed local governments under the LGTCA, and to the actions brought against local governmental employees for which the LGTCA makes local governments liable to provide a legal defense and to pay judgments for compensatory damages, it fully encompasses the scope of the former notice statute.
 

 Id.
 
 at 391-92, 754 A.2d 379 (Emphasis added).
 

 Significantly, the Court has characterized the notice requirement as a “condition[] precedent” to maintaining a subsequent legal action.”
 
 Faulk,
 
 371 Md. at 304, 808 A.2d
 
 *480
 
 1262. Of import here, the notice requirement operates independent of the limitations period that applies generally to the filing of suit. Serving timely notice is essential to preserve a claimant’s right to file suit at any time during the limitations period. In contrast to the tolling of limitations, nothing in the LGTCA expressly provides for tolling the notice period.
 
 See Amer. Gen. Assur. Co. v. Pappano,
 
 374 Md. 339, 351, 822 A.2d 1212 (2003);
 
 Piselli v. 75th Street Medical,
 
 371 Md. 188, 215, 808 A.2d 508 (2002);
 
 Frederick Road Ltd. Ptshp. v. Brown & Sturm,
 
 360 Md. 76, 95-6, 756 A.2d 963 (2000);
 
 Doe v. Maskell,
 
 342 Md. 684, 696, 679 A.2d 1087 (1996).
 

 As the Court explained in
 
 Neuenschwander v. Washington Suburban Sanitary Commission,
 
 187 Md. 67, 77, 48 A.2d 593 (1946), overruled on other grounds as stated in
 
 Arnold v. Prince George’s County,
 
 270 Md. 285, 311 A.2d 223 (1973), the notice requirement derives from the Legislature’s authority to grant or deny an individual the right to pursue a legal action against a municipal corporation. The Court said:
 

 When the Legislature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. The Legislature has thus the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained.
 

 Neuenschwander,
 
 187 Md. at 76, 48 A.2d 593 (citations omitted).
 

 There are circumstances when a litigant is excused from strict compliance with the various aspects of the notice obligation. The Court of Appeals has recognized that “the purpose of the notice statute was fulfilled by substantial compliance with the statutory requirements.”
 
 Williams,
 
 359 Md. at 390, 754 A.2d 379;
 
 see Grubbs v. Prince George’s County,
 
 267 Md. 318, 325, 297 A.2d 754 (1972);
 
 Jackson v. Board of
 
 
 *481
 

 County Commissioners,
 
 233 Md. 164, 167-168, 195 A.2d 693 (1963).
 

 Although the case
 
 sub judice
 
 does not involve a claim of substantial compliance with the notice requirement, it is helpful to understand the concept of substantial compliance. In
 
 Faulk,
 
 371 Md. at 299, 808 A.2d 1262, the Court said:
 

 Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute.
 
 Moore,
 
 371 Md. at 171-72, 807 A.2d 632;
 
 Maynard,
 
 359 Md. at 389-90, 754 A.2d 379;
 
 Jackson,
 
 233 Md. at 167, 195 A.2d 693. Substantial compliance “requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision.”
 
 Moore,
 
 371 Md. [at] 171[, 807 A.2d 632].
 
 See also Williams v. Montgomery County,
 
 123 Md.App. 119, 131, 716 A.2d 1100 (1998),
 
 aff'd sub nom. Williams v. Maynard,
 
 359 Md. 379, 754 A.2d 379 (2000) (noting that notice must be given even if it is deficient in some respects). In
 
 Condon v. Univ. of Maryland,
 
 332 Md. 481, 496, 632 A.2d 753 (1993), we said that substantial compliance is “such communication that provides ... ‘requisite and timely notice of facts and circumstances giving rise to the claim.’ ”
 
 Id.
 
 (quoting
 
 Conaway v. State,
 
 90 Md.App. 234, 246, 600 A.2d 1133 (1992)).
 

 When, as here, a litigant has not substantially complied with the notice provision, a court may overlook the failure to provide the requisite notice, as directed by the Act, if there is “good cause” for the dereliction. Under C.J. § 5-304(c), the plaintiff has the burden to establish good cause to excuse the failure to comply with the notice requirement,
 
 and
 
 to show that the defendant will suffer no prejudice even if there is good cause.
 
 Heron v. Strader,
 
 361 Md. 258, 260, 761 A.2d 56 (2000);
 
 Hargrove v. Mayor and City Council of Baltimore,
 
 146 Md.App. 457, 461, 807 A.2d 149 (2002);
 
 Downey v. Collins,
 
 866 F.Supp. 887, 889 (D.Md.1994).
 

 
 *482
 
 Maryland courts evaluate good cause based upon “ ‘whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.’ ”
 
 Heron,
 
 361 Md. at 271, 761 A.2d 56 (quoting
 
 Westfarm Associates v. Washington Suburban Sanitary Commission,
 
 66 F.3d 669, 676-677 (4th Cir.1995)). As we noted in
 
 Hargrove,
 
 146 Md.App. at 463, 807 A.2d 149, “good cause is a test ‘of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.’ ”
 
 (Citing Downey,
 
 866 F.Supp. at 889-90).
 
 See Bibum v. Prince George’s County,
 
 85 F.Supp.2d 557, 565 (D.Md.2000)(“ ‘[T]he test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.’ Ignorance of the statutory requirement does not constitute good cause.”) (citations omitted).
 

 The trial court has discretion to determine whether good cause exists to waive the statutory notice requirement.
 
 Heron,
 
 361 Md. at 270, 761 A.2d 56. The appellate court -will not disturb the trial court’s determination absent an abuse of that discretion.
 
 Id.
 
 at 271, 761 A.2d 56;
 
 Moore,
 
 371 Md. at 168, 807 A.2d 632. In
 
 Hargrove,
 
 we said:
 

 “The discretion with which all courts determine whether good cause has or has not been shown is broad. It involves the exercise of one of the most important judicial functions. A ruling made in the exercise of that discretion is entitled to the utmost respect. It should not be overturned by an appellate court unless there is a clear showing that the discretion has been abused—that the result falls outside its broad limits.”
 

 146 Md.App. at 463, 807 A.2d 149 (quoting
 
 Madore v. Baltimore County,
 
 34 Md.App. 340, 346, 367 A.2d 54 (1976)).
 

 
 *483
 
 II.
 

 With this framework, we turn to consider the parties’ contentions.
 

 Appellant argues that the trial court erred or abused its discretion in finding that she did not establish good cause under C.J. § 5-304(c), so as to excuse her belated notice under C.J. § 5-304(a). Ms. Rios insists that she established good cause “due to excusable neglect or mistake,” because she had no knowledge, or reason to know, that the Clinic was a County facility or that Dr. Footer worked for the County when he delivered Luis. According to appellant, she had no contact with Dr. Footer until the delivery at the Hospital, and “was not aware that [the County] had played any role in causing her son’s injuries.” Moreover, because appellant paid Holy Cross, a private institution, rather than the County, appellant maintains that she had no reason to suspect that Dr. Footer was a County employee. Appellant states:
 

 [N]o medical record or document of any sort has been produced ... that describes “Project Delivery” or demonstrates that Appellant was given notice that her delivery was being performed by a physician employed by the County, as she did not receive prenatal care from Dr. Footer at the clinic in Rockville. Similarly, there is no documentation in any of the medical records that would place an attorney evaluating this case on notice, even inquiry notice, that Dr. Footer was employed by the County at the time he performed Luis’ delivery.
 

 In addition, appellant contends that she exercised the same “degree of diligence” in prosecuting her claim that “an ordinarily prudent person would have exercised under the same or similar circumstances.... ” She adds: “An ordinarily prudent person under these circumstances ... would not have suspected that Montgomery County, Maryland played a role in the delivery nor that, as a result, the County should be put on notice of a claim.”
 

 Furthermore, appellant considers it significant that, under C.J. § 5-109, the statute of limitations “does not commence
 
 *484
 
 until Luis reaches the age of eighteen, or until December 31, 2009.” Therefore, she asserts that it is “an unreasonable burden” to expect someone in her situation to obtain counsel, conduct an investigation, and give notice within six months of the occurrence.
 

 While it is undisputed that appellant was unaware that the Clinic was a County facility or that Dr. Footer was a County employee when he delivered Luis, appellees maintain that appellant’s delay in providing notice was unreasonable. They contend that appellant had a duty to investigate, and complain that she failed to act “with reasonable diligence in seeking to learn the doctor’s identity and who he worked for”; and she failed to show good cause to justify the delay. In support of their position, appellees assert that the diligence standard must be considered “in light of the goal of the LGTCA—to promote prompt investigations and evaluations of liability by local governments.” Because Ms. Rios failed to exercise ordinary diligence “to discern the doctor’s employment,” appellees insist that the court did not err or abuse its discretion in denying her request to waive the statutory requirement of timely notice.
 

 Appellees also point out that Ms. Rios was alerted to the County’s involvement because she signed a health form at the clinic, in Spanish, which contained the words “Montgomery County Government” in large letters at the top. Further, they note that the prenatal clinic was “staffed with Spanish interpreters” and had other “County markings.”
 

 In addition, appellees insist that “ignorance of the doctor’s employment does not establish good cause.” They state: “Not only did Ms. Rios have information from which she could have discerned the County’s role in this case within the notice period, but she has provided no indication of having tried to determine who the doctor worked for within a reasonable time of delivering her child. Having undertaken no affirmative act to pursue her claim,” appellees assert that “Ms. Rios did not show good cause for failing to comply with the notice requirement.”
 

 
 *485
 
 III.
 

 Several cases that have discussed the interrelated issues of substantial compliance and good cause inform our analysis. We turn to consider them.
 

 In
 
 Heron,
 
 361 Md. at 260-61, 761 A.2d 56, the plaintiff brought suit against Prince George’s County under the LGTCA, claiming malicious prosecution, false arrest, and false imprisonment. The case arose from the plaintiffs arrest on several charges on August 24, 1997; he was acquitted of all the charges on March 3, 1998.
 
 Id.
 
 at 261, 761 A.2d 56. Thereafter, the plaintiff filed a notice of claim under the Act on April 30, 1998.
 
 Id.
 
 The Court of Appeals held that the notice of claim was untimely as to the false arrest and false imprisonment claims, and that the plaintiff lacked good cause for the late filing.
 
 Id.
 
 But, it found that the notice was timely as to the malicious prosecution claim,
 
 id.,
 
 because that cause of action did not accrue until the acquittal.
 
 Id.
 
 at 265, 761 A.2d 56. With regard to the belated notice, the Court held that the trial judge did not abuse his discretion in finding that “the pendency of a criminal case was not sufficient to constitute good cause for late filing.”
 
 Id.
 
 at 271, 761 A.2d 56. The Court agreed with the trial judge that “an ordinarily prudent person, in Petitioner’s circumstances, would have been able, through the exercise of reasonable diligence, to file such a Notice of Claim.”
 
 Id.
 

 In its discussion of good cause, the Court considered the kinds of factors that have generally been found to constitute good cause for a belated notice. It said:
 

 While courts generally consider a combination of factors, circumstances that have been found to constitute good cause fit into several broad categories: [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, and [4] ignorance of the statutory notice requirement.”
 

 
 *486
 

 Id.
 
 at 272, 761 A.2d 56 (footnotes and internal citations omitted).
 

 In a footnote in
 
 Heron,
 
 361 Md. at 272 n. 13, 761 A.2d 56, the
 
 Heron
 
 Court cited our decision in
 
 Williams v. Montgomery County,
 
 123 Md.App. 119, 716 A.2d 1100 (1998), for the proposition that this Court “has specifically rejected ignorance of the law requiring notice as good cause.” Thereafter, in
 
 Hargrove,
 
 146 Md.App. at 467, 807 A.2d 149, we discussed
 
 Heron,
 
 noting that the
 
 Heron
 
 Court “reaffirmed that Maryland has specifically rejected the ignorance of the law requirement as good cause.”
 

 In the consolidated case of
 
 Moore v. Norouzi,
 
 371 Md. at 159, 807 A.2d 632, the claimants were injured in motor vehicle accidents allegedly caused by employees of Montgomery County. Although they provided timely notice of their claims, the notices were not provided directly to the County, in the manner directed by the statute.
 
 Id. See
 
 LGTCA, § 5-304(b)(l)(iii). Instead, they sent notice to Trigon Administrators, Inc. (“Trigon”), a third-party administrator retained by the County pursuant to a contract.
 
 Id.
 
 The Court considered whether “notice to a third-party claims administrator, acting on behalf of a local government,” constituted strict or substantial compliance with the notice requirements of LGTCA § 5-304.
 
 Id.
 
 at 158, 807 A.2d 632.
 

 The Court concluded that, based on the nature of the County’s system of claims administration, coupled with the control that the County exercised over Trigon’s activities, the plaintiffs substantially complied with the statutory notice requirement.
 
 Id.
 
 at 177, 807 A.2d 632. In reaching that conclusion, the Court reasoned that “[sjubstantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation.”
 
 Id.
 
 at 178, 807 A.2d 632. The
 
 Moore
 
 Court stated:
 

 Consequently, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or
 
 *487
 
 unit has contracted for that function, the information required by § 5-304(b)(3) to be supplied,
 
 who thus acquires actual knowledge within the statutory period,
 
 the tort claimant has substantially complied with the notice provisions of the LGTCA.
 

 Moore,
 
 371 Md. at 178, 807 A.2d 632 (emphasis added).
 

 Moreover, the Court determined that, even if substantial compliance was not established, there was evidence to find good cause to relieve the claimants from the notice requirements, pursuant to LGTCA § 5-304(c).
 
 Id.
 
 at 179, 807 A.2d 632. In this regard, the Court noted that each plaintiff acted as would an “ordinarily prudent person under similar circumstances,” by relying on the representations of Trigon that it represented the County.
 
 Moore,
 
 371 Md. at 179, 807 A.2d 632.
 
 See also Faulk v. Ewing,
 
 371 Md. at 307-08, 808 A.2d 1262 (concluding that plaintiffs timely notice to town’s insurer, rather then the town, constituted substantial compliance with statutory notice requirement, because notice was provided in sufficient time to enable the town to conduct a “timely investigation”; “the evidence [was] still fresh”; and the insurer was notified “that Plaintiff expected some type of compensation from its insured, the Town of Easton, for his personal injuries and property damage”);
 
 Hargrove,
 
 146 Md.App. at 461-2, 807 A.2d 149 (upholding circuit court’s dismissal, because “appellants never demonstrated to the trial court good cause for their failure to abide by the notice requirement,” and emphasizing that “the trial court may consider whether the defendant was prejudiced only after the plaintiff files a motion with the court showing good cause for his or her failure to adhere to the notice requirement”);
 
 Downey,
 
 866 F.Supp. at 890 (concluding that claimant did not show “good cause” for belated notice, even though he had no memory of underlying event that led to injury, and it took three months to locate a witness to a police officer’s beating; plaintiff still had three months in which to file timely notice, and the plaintiffs decision to wait until the county supplied him with evidence did not excuse the delay).
 

 
 *488
 
 Appellant relies on
 
 Westfarm Assoc. Ltd. Partnership v. Washington Suburban Sanitary Comm’n,
 
 66 F.3d 669, to support her good faith claim. There, the Fourth Circuit concluded that the plaintiff had show good cause in failing to comply with the notice requirement of the LGTCA.
 
 Id.
 
 at 677. In our view, appellant’s reliance on
 
 Westfarm
 
 is misplaced.
 

 Westfarm Associates Limited Partnership (“Westfarm”), a developer, owned land adjacent to a sewer owned by Washington Suburban Sanitary Commission (“WSSC”).
 
 Id.
 
 at 673. In 1991, when Westfarm was about to sell its land, it discovered the presence of a toxic chemical on its land.
 
 Id.
 
 As a result, Westfarm engaged in extensive testing to ascertain the source of the contamination, and concluded that it came from an adjacent landowner, the International Fabricare Institute («IFI”), which had, until 1974, operated a commercial dry-cleaning facility.
 
 Id.
 
 at 674. In January 1992, Westfarm sued IFI for polluting its property.
 
 Id.
 
 In November 1992, IFI sought leave to file a third party complaint against WSSC, and WSSC was added as a party in January 1993.
 
 Id.
 
 Thereafter, Westfarm amended its complaint to add WSSC as a defendant, based on common law and statutory causes of action.
 
 Id.
 
 During discovery in April 1993, a video camera was used to inspect WSSC’s sewer system, constructed in 1968.
 
 Id.
 
 It revealed a variety of defects that caused leakage of the toxic chemicals onto Westfarm’s property.
 
 Id.
 

 WSSC moved to dismiss the complaint claiming,
 
 inter alia,
 
 that, under the LGTCA, WSSC is treated as a local government and entity, and Westfarm failed to provide timely notice of its claims pursuant to the requirements of the Act.
 
 Id.
 
 at 676. The federal district court waived the notice requirement on the ground that Westfarm had shown good cause for the delay and WSSC was not prejudiced.
 
 Id.
 
 Among other things, the jury later ruled against WSSC in regard to West-farm’s negligence claim.
 
 Id.
 

 On appeal, the Fourth Circuit ruled: “Under these circumstances, it was not an abuse of discretion for the district court
 
 *489
 
 to have found that Westfarm exercised reasonable diligence, and thus had shown ‘good cause’ for waiving the LGTCA notice requirement.”
 
 Id.
 
 at 677. Pointing to Westfarm’s prompt and vigorous efforts to determine the source of the contamination, the court reasoned: “In the instant case, the circumstances involved environmental contamination, the source and causation of which typically require lengthy investigation for even an extraordinarily diligent person to discern.”
 
 Id.
 

 Although the medical malpractice case of
 
 Gould v. U.S. Dept. of Health and Human Services,
 
 905 F.2d 738 (4th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 666 (1991), involved a limitations issue, we consider its reasoning persuasive here.
 

 In August 1980, Mr. Gould sought health care at the South County Family Health Care Corporation (the “Health Center”) in Anne Arundel County for what turned out to be Rocky Mountain Spotted Fever.
 
 Id.
 
 at 740. He was treated by two doctors who were federal employees, both of whom were assigned to work at the Health Center.
 
 Id.
 
 One was a civilian member of the United States Public Health Service, an agency of the Department of Health and Human Services (“HHS”), and the other was a commissioned officer.
 
 Id.
 

 Gould died from the illness on September 4, 1980.
 
 Id.
 
 Three years later, the attorney for Gould’s wife ascertained that the attending physicians were federal employees.
 
 Id.
 
 On September 2, 1983, “within hours of the expiration of the claim under Maryland’s three-year statute of limitations,”
 
 id.,
 
 Gould’s wife, on behalf of herself and her children, filed claims against the doctors with the Health Claims Arbitration Board, claiming negligence in failing to diagnose the illness.
 
 Id.
 
 at 740-41. The claims were dismissed in December 1985, because the doctors were not subject to suit in a state forum.
 
 Id.
 

 In the meantime, in August 1985, because the doctors were employed with the United States Public Health Service, the plaintiffs filed an administrative tort claim with HHS, alleging
 
 *490
 
 negligence by the doctors “in failing to expeditiously diagnose and treat” Mr. Gould.
 
 Id.
 
 That claim was denied in August 1986, on the ground that it was barred by the statute of limitations applicable to claims prosecuted under the Federal Tort Claims Act (the “Federal Act”), 28 U.S.C. § 2401(b).
 
 Id.
 
 Thereafter, in 1987, the plaintiffs instituted a malpractice suit in federal court in 1987 against HHS under the Federal Act, claiming a failure to diagnose.
 
 Id.
 
 The court granted the defense motion for summary judgment, on the ground that the suit was time barred under 28 U.S.C. § 2401(b).
 
 Id.
 

 On appeal, appellants claimed that because they had no knowledge that the attending doctors were federal employees, limitations should be tolled until the time when they discovered that the physicians were federal employees.
 
 Id.
 
 They argued that “the exercise of due diligence would not have revealed this fact.”
 
 Id.
 
 The Fourth Circuit disagreed.
 
 Id.
 
 It held that the statute of limitations began to run when Mr. Gould died because, at that time, Mrs. Gould was aware of the attending physicians’ identities and could have investigated and discovered their employment status within the period of limitations.
 
 Id.
 
 at 743.
 

 In reaching its decision, the Fourth Circuit noted that Congress “conditioned” a “limited waiver of sovereign immunity” on “the prompt presentation of tort claims against the government.”
 
 Id.
 
 at 742. Citing
 
 United States v. Kubrick,
 
 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Fourth Circuit said, 905 F.2d at 742: “The Supreme Court, in recognizing this balance, has instructed the judiciary to abstain from extending or narrowing § 2401(b) beyond that which Congress intended and thereby defeating its obvious purpose.” The court continued,
 
 id.:
 

 Applying these principles, federal courts with few exceptions have dismissed complaints where a plaintiff failed to file a claim with the appropriate federal agency within the two-year limitations period, even in cases where the plaintiffs failure to submit a claim in a timely manner was the result of the plaintiffs ignorance of the defendant’s status as a federal employee.
 
 Flickinger v. United States,
 
 523
 
 *491
 
 F.Supp. 1372, 1375 (W.D.Pa.1981). Courts have held that despite the harsh impact of this rule on plaintiffs,
 
 Wilkinson v. United States,
 
 677 F.2d 998, 1001 (4th Cir.),
 
 cert. denied,
 
 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), and “strong equitable considerations notwithstanding, the two-year limitation period of 28 U.S.C. § 2401(b) cannot be tolled or waived.”
 
 Lien v. Beehner,
 
 453 F.Supp. 604, 606 (N.D.N.Y.1978).
 

 Significantly, the Fourth Circuit rejected the plaintiffs’ contention that “a claim does not accrue until a plaintiff learns the legal identity of the alleged tort-feasor as a federal employee/
 
 Id.
 
 at 743. The court held,
 
 id.:
 

 IPJlaintiffs’ claim accrued
 
 ...
 
 on September b, 1980, upon the death of Gary Francis Gould. Plaintiffs at this time were aware of the existence of the injury and its cause, including the identity and conduct of attending physicians. This sufficiently armed plaintiffs with the “critical facts” to investigate the claim and present it within the two-year statute of limitations.
 

 Ms. Rios insists that
 
 Gould
 
 is not controlling, because it was based upon the statute of limitations under the Federal Act, rather than the notice requirement under the LGTCA. Although
 
 Gould
 
 is not precisely on point, we believe that the key facts are similar, and its rationale compels the conclusion that the circuit court did not abuse its discretion in concluding that appellant did not establish good cause to excuse her long delay in providing the required statutory notice. We explain.
 

 At or about the time of Luis’s birth, appellant certainly knew that Luis was injured. She was also aware of the doctor who delivered Luis, even though she did not know his name or employer. Because appellant was “on notice that there may have been an invasion of ... legal rights ...” by the doctor, it was incumbent upon her to “investigate....”
 
 Gould,
 
 905 F.2d at 744. Even with a modest effort, Ms. Rios was armed with sufficient information to ascertain Dr. Footer’s identity and the identity of his employer. The burden was on Ms. Rios “to discover the employment status of the tort-feasor and to bring
 
 *492
 
 suit within the applicable limitations period.”
 
 Id.
 
 at 745. Yet, despite appellant’s “affirmative duty” to investigate, she did not exercise due diligence.
 

 Importantly, this case does not involve a claim that appellant’s effort to ascertain the doctor’s employment status was thwarted by the County, or that anyone sought “to mislead or deceive” or “hide” the doctor’s status as a County employee.
 
 Id.
 
 at 745. The
 
 Gould
 
 Court reasoned,
 
 id.
 
 at 745-76:
 

 It will not suffice for plaintiffs to assert baldly that “even due diligence would not have discovered the fact that the physicians” were federal employees. The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable.[ ] No evidence was offered to support the assertion that “critical facts” were undiscoverable.... No impediment, other than plaintiffs’ inaction, shielded the physicians’ legal identity.
 

 Accordingly, we agree with the circuit court that appellant’s failure to make any inquiry whatsoever as to the doctor’s identity or employment status does not comport with good cause. In stark contrast to
 
 Westfarm,
 
 in which the claimant immediately, diligently, and vigorously sought to investigate the source of pollution, years went by before appellant made any effort whatsoever to determine Dr. Footer’s identity and employment status. Moreover, in this case, unlike in
 
 West-farm,
 
 it would not have required much effort to obtain the requisite information. Applying a reasonably prudent person standard, Ms. Rios did not demonstrate that she exercised a modicum of diligence. Were we to overlook appellant’s failure to act for a period of almost ten years, it would be hard to conceive of any basis on which to ever uphold the notice requirement that is an integral part of the LGTCA.
 

 In sum, we cannot improve upon what the
 
 Gould
 
 court said in rejecting the plaintiffs’ limitations argument; the same reasoning applies here with respect to the notice requirement:
 

 We are not unmindful that a strict adherence to the requirements of the statute of limitations provision under
 
 *493
 
 the FTCA often works a substantial hardship on plaintiffs and may have a harsh impact on a party innocent of any impropriety. Statutes of limitations often make it impossible to enforce what are otherwise valid claims. Although we recognize the hardship resulting to the plaintiffs in this ease, we have no choice but to apply the law as written. To accept plaintiffs’ arguments would be re-writing the FTCA to allow broad, open-ended exceptions to §§ 2675(a) and 2401(b).
 
 Flickinger,
 
 523 F.Supp. at 1376-77. “Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit.”
 
 Mann v. United States,
 
 399 F.2d 672, 673 (9th Cir.1968).
 
 See also Wollman [v. Gross
 
 ], 637 F.2d [544,] 549 [ (8th Cir.1980) ]. As the Supreme Court has instructed, it is clearly the prerogative of Congress, not the judiciary, to reform the terms and scope of waiver of sovereign immunity beyond that which Congress intended.
 
 Kubrick,
 
 444 U.S. at 117-19, 100 S.Ct. 352.
 

 “It goes without saying,” as the
 
 Kubrick
 
 Court observed, “that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims.”
 
 Kubrick,
 
 444 U.S. at 125, 100 S.Ct. 352. Yet, they serve important, well-established purposes affirmed throughout our jurisprudence. We are bound to give them effect until such time as the creator of such provisions, the legislative branch, exercises its prerogative to amend the statute.
 

 Gould,
 
 905 F.2d at 747.
 

 IV.
 

 Ms. Rios attempted to circumvent the court’s ruling as to good cause by raising in her motion to reconsider, for the first time, the claim that the notice requirement of the LGTCA is unconstitutional as applied to minors. She theorized that the notice requirement “unreasonably restricts a minor’s remedy and access to the courts,” in violation of
 
 *494
 
 Article 19 of the Maryland Declaration of Rights,
 
 [9]
 
 and “irrationally denies minors the equal protection of the laws,” in violation of the 14th Amendment of the U.S. Constitution. The court denied the motion, without a hearing.
 

 On appeal, appellant reiterates that the LGTCA denies minors the equal protection of the laws. She argues: “The Act creates a cause of action for both minors and adults but denies minors the ability to pursue this cause of action on their own due to impossibility.” Noting that “a child is disabled from bringing a tort action until he or she is 18 years old,” appellant contends, in effect, that the child’s right to do so becomes hollow in the context of a claim under the LGTCA, because an infant could never personally provide the requisite notice. Thus, she suggests that strict application of the notice requirement would defeat a child’s lawful right to bring suit when the child reaches majority.
 

 Appellant concedes that “age is not a suspect classification, and the notice requirement of the Local Government Tort Claims Act is, therefore, subject to rational basis scrutiny.
 
 See Gregory v. Ashcroft,
 
 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).” But, she asserts that “there is no rational basis for requiring a minor to give notice of a claim under the Local Government Tort Claims Act before he/she reaches six months of age in order to pursue a cause of action created by the very same Act. The Act does not levy any such impossible requirements upon adults, and its application to minors is clearly irrational.” Further, Ms. Rios states:
 

 “ ‘It is well settled that when a person negligently injures a minor two separate causes of action arise; the minor child has a cause of action for injuries suffered by it, and the parent or parents of the minor child have a cause of action for loss of services and for medical expenses incurred by the
 
 *495
 
 parent for treatment of the minor’s injuries.’ ”
 
 Garay v. Overholtzer,
 
 332 Md. 339, 346, 631 A.2d 429 (1993). Additionally, it is well settled that “ ‘a child is disabled from bringing a tort action until he or she is 18 years old.’ ”
 
 Piselli,
 
 371 Md. at 208, 808 A.2d 508.
 
 The Local Government Tort Claims Act creates a cause of action against a local government entity provided that the claimant complies with its notice requirement. Common sense dictates that a six-month-old cannot give notice of his/her claim. The Act, therefore, forecloses a minor’s ability to pursue the cause of action created by it after attaining the age of majority if his/her parent or parents were irwapabls of giving the required notice.
 
 As applied to adults, however, the Act clearly does not foreclose their ability to pursue the cause of action created by it, as it is possible for them to comply with its terms.
 

 (Emphasis added).
 

 In support of her claim that the notice requirement places “unreasonable restrictions upon a minor’s remedy and the minor’s access to the courts,” appellant relies on
 
 Piselli v. 75th Street Medical,
 
 371 Md. 188, 808 A.2d 508 (2002). In
 
 Püelli,
 
 the minor’s father noticed that his son was walking in an unusual manner; the boy, who was almost eleven years of age, complained of pain in his hip.
 
 Id.
 
 at 194, 808 A.2d 508. On August 2, 1993, a doctor at the medical center diagnosed the son with a pulled hamstring muscle, prescribed ibuprofen and cold compresses, and instructed the father to return with his son if his condition did not improve in a few days.
 
 Id.
 
 at 195, 808 A.2d 508. Three days later, while at the beach, the boy was injured when a wave knocked him over.
 
 Id.
 
 He suffered extensive injuries, including damage to the growth plate in his leg.
 
 Id.
 

 On July 24, 1998, the Pisellis filed suit in federal court against the medical center and the treating physician.
 
 Id.
 
 at 196, 808 A.2d 508. The defendants moved for summary judgment based on limitations, but the court denied the motion, finding a “genuine factual dispute” as to when the injury should have been discovered.
 
 Id.
 
 The jury found for the
 

 
 *496
 
 treating physician and against the medical center, but the court then ruled as a matter of law that the action was barred by limitations.
 
 Id.
 
 at 197, 808 A.2d 508.
 

 On appeal, the Fourth Circuit certified the following question of law to the Maryland Court of Appeals,
 
 id.
 
 at 198, 808 A.2d 508:
 

 “[W]hether, when a claim is brought by parents on behalf of a child who was injured before reaching age eleven, the three-year statute of limitations of section 5-109(a)(2) [of the Courts and Judicial Proceedings Article] begins to accrue upon the discovery of the injury by the child or upon discovery of the injury by the parents.”[
 
 10
 
 ]
 

 The Court of Appeals recognized that “[s]everal restrictions upon traditional remedies or access to the courts have been upheld under Article 19 as reasonable.”
 
 Id.
 
 at 206, 808 A.2d 508. Observing that “the application of several traditional immunities from suit has been upheld in the face of Article 19 challenges,”
 
 id.
 
 at 207, 808 A.2d 508, the Court nevertheless held that the time limitation prescribed by C.J. § 5-109 violated Article 19 as applied to a minor’s tort claim; it
 
 *497
 
 constituted an “unreasonable burden” upon a minor’s remedy and the minor’s access to the courts.
 
 Id.
 
 at 215, 808 A.2d 508. The Court reasoned: “In our view, mandating that the three and five-year limitations periods run against a minor’s tort claim from the time the minor is 11 years old, or under a few circumstances 16 years old, is an unreasonable restriction upon a child’s remedy and the child’s access to the courts.”
 
 Id.
 
 The Court continued,
 
 id.
 
 at 215-16, 808 A.2d 508:
 

 [A] child is disabled from bringing a tort action until he or she is 18 years old [, and] a child’s action must be brought by the parents on the minor child’s behalf. Thus, if the parents are dilatory and fail to sue on behalf of the child, the three and five-year periods applicable to most child medical malpractice claims will expire, at the latest, when the child is 16 years old-two years before the child is able to bring an action [on his own]. With regard to the very limited types of medical malpractice claims set forth in subsection (c), when the time periods run from the age of 16, the child could have only one year after majority to bring the action.
 

 Referring to the case of
 
 Johns Hopkins Hospital v. Pepper,
 
 346 Md. 679, 697, 697 A.2d 1358 (1997),
 
 [11]
 
 the
 
 Piselli
 
 Court added, 371 Md. at 216, 808 A.2d 508:
 

 
 *498
 
 We emphasized in
 
 Pepper
 
 that, if the parents’ failure to bring a claim before the expiration of limitations had the effect of barring the minor child’s claim, “the child would be twice victimized—once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute [the] claims.” 346 Md. at 695, 697 A.2d 1358. The Court continued: “We cannot countenance a result that would leave the only innocent victim in such a transaction uncompensated for his or her injuries” and that such a result was contrary to “[p]ublic policy and justice,”
 
 ibid.
 
 To this, we need only add that barring an injured child’s medical malpractice claim before the child is able to bring an action is an unreasonable restriction upon the child’s right to a remedy and access to the courts guaranteed by Article 19 of the Maryland Declaration of Rights.
 

 Appellant argues that the reasoning in
 
 Piselli
 
 applies here. She asserts that “the notice requirement of the Local Government Tort Claims Act should be found to be an ‘unreasonable restriction upon a child’s remedy and the child’s access to the courts,’ ” because the notice requirement of the Act, while not a statute of limitations, unreasonably “restricts a child’s access to the courts when the required notice has not been given.” She adds:
 

 Similar to Section 5-109, the notice requirement bars a minor’s claim against a local governmental entity before the minor is able to give the required notice, and it is also similarly unreasonable and unrealistic to rely upon the minor’s parents to give the required notice in the minor’s stead. ' In light of the recent finding by the Court of Appeals in
 
 Piselli,
 
 this Court should find that the notice requirement of the Local Government Tort Claims Act is
 
 *499
 
 unconstitutional under Article 19 of the Maryland Declaration of Rights.
 

 Appellees respond that “[m]inors have the same access to the courts as any other claimant—all claimants must serve notice on a local government to protect their ability to file suit within the applicable statute of limitations (which usually runs past the notice period).” They also assert that the LGTCA notice provision is not unconstitutional, because C.J. § 5-304(b) permits a “representative of the claimant” to serve notice on the claimant’s behalf, thus protecting the rights of the claimant. Appellees do not discuss
 
 Piselli,
 
 however, beyond the following statement:
 

 The Court of Appeals’ decision in
 
 Piselli v. 75th Street Medical,
 
 371 Md. 188, 808 A.2d 508 (2002), is inapposite to this appeal, because the case focused only on the statute of limitations prescribed by Cts. & Jud. Proc. § 5—109—it did not address the notice requirement [under the Act],
 

 Instead, appellees contend that
 
 Johnson v. Maryland State Police,
 
 331 Md. 285, 628 A.2d 162 (1993), controls this case. In
 
 Johnson,
 
 two sixteen-year-old girls were injured when their vehicle collided with a State Police car responding to a call.
 
 Id.
 
 at 288, 628 A.2d 162. The teens filed claims against the State thirteen months after the accident, pursuant to the Maryland Tort Claims Act (“MTCA”).
 
 Id.
 
 The statute in effect at the time, Md.Code (1984, 1993 Repl. Vol.), § 12-106(b)(1) of the State Government Article (“S.G.”), had a notice requirement that provided that no tort action could be filed against the State unless “the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim.”
 
 [12]
 

 Id.
 
 at 288-89, 628 A.2d 162. Because the plaintiffs failed to file the requisite notice within the statutory period, the circuit court dismissed the case.
 
 Id.
 
 at 289, 628 A.2d 162.
 

 
 *500
 
 On appeal, the teens argued that, because of their minority status at the time of the accident, the MTCA’s 180-day notice requirement violated their constitutional rights to equal protection under the law and unreasonably restricted their right of access to the courts.
 
 Id.
 
 at 292, 628 A.2d 162. The Court of Appeals rejected that contention.
 
 Id.
 
 at 298, 628 A.2d 162. It explained that the MTCA’s “administrative claim requirement is not a statute of limitations. Instead, it is ‘a condition precedent to the initiation of an action under the Act.’ ”
 
 Id.
 
 at 290, 628 A.2d 162
 
 (quoting Simpson v. Moore,
 
 323 Md. 215, 219, 592 A.2d 1090 (1991)). The Court said,
 
 id.
 
 at 296, 628 A.2d 162:
 

 The 180-day administrative claim requirement allows the State to predict its potential tort liability more accurately, so that it may enact a more accurate annual budget. In addition, the claim requirement enables the State to make early decisions on the merits of particular claims, and allows the State to take remedial safety measures more quickly, thereby minimizing the cost of litigation for the taxpayers.
 

 Of equal note, the Court rejected the appellants’ claim under Article 19 of the Maryland Declaration of Rights that a minor’s access to the courts is impaired by the notice requirement of the MTCA.
 
 Id.
 
 at 297, 628 A.2d 162. In its view, the statutory notice constituted a reasonable restriction that did not give rise to a constitutional violation.
 
 Id.
 
 As in
 
 Gould,
 
 the Court of Appeals focused on the Legislature’s right to condition a waiver of sovereign immunity on compliance with the notice requirement. It said,
 
 id.
 
 at 297-98, 628 A.2d 162:
 

 Article 19 has never been interpreted to mean that the State must allow itself, as such, to be sued at all.[ ] Before the State waived its governmental immunity, a person injured by the negligence of a State employee would have had an action in tort against that State employee personally, but would have had no action whatsoever against the State. The statutory scheme under attack substitutes the State, with its financial resources, as the defendant. In exchange for this benefit to potential plaintiffs, the Legislature has determined that the State must have prompt notice of
 
 *501
 
 claims against it. Thus, the State’s waiver of immunity, although conditioned upon filing a claim within 180 days of the injury, benefits a potential plaintiff by assuring that any judgment eventually obtained will be satisfied. We cannot say that the administrative claim condition imposed on potential plaintiffs in actions against the State is unreasonable in light of the benefit to potential plaintiffs.
 

 Thus, the
 
 Johnson
 
 Court agreed “with those cases holding that administrative claim requirements, in statutes waiving state governmental tort immunity, do not violate equal protection principles.”
 
 Id.
 
 at 296, 628 A.2d 162. It explained that “[wjhether, and to what extent, there should be state governmental immunity from tort suits has long been regarded as the prerogative of the Maryland General Assembly.”
 
 Id.
 
 (citation omitted). The Court said,
 
 id.:
 

 By enacting the Maryland Tort Claims Act, the General Assembly chose to allow some tort suits against the State. As the full application of sovereign immunity does not violate the federal and state constitutions, this partial or conditional waiver of sovereign immunity, retaining the same classification between victims of public torts and victims of private torts, but with less onerous consequences, does not violate constitutional equal protection principles ....
 

 We agree with appellees that the rationale of
 
 Johnson,
 
 not
 
 Piselli,
 
 applies here. Although
 
 Johnson
 
 involved the MTCA, not the LGTCA, that is a distinction without a difference with respect to the notice issue raised by Rios.
 

 In adopting the rationale of
 
 Johnson,
 
 a ease involving the MTCA, we are mindful that the Court of Appeals has previously interpreted the LGTCA by reference to the MTCA. To illustrate, in
 
 Heron v. Strader, supra,
 
 361 Md. at 263, 761 A.2d 56, which involved the LGTCA, the Court construed the term “injury” under the LGTCA consistent with its interpretation of that term under the MTCA. Citing
 
 Haupt v. State,
 
 340 Md. 462, 667 A.2d 179 (1995), and
 
 Lopez v. Maryland State Highway Admin.,
 
 327 Md. 486, 610 A.2d 778 (1992), the
 
 Heron
 
 
 *502
 
 Court said, 361 Md. at 263-64, 761 A.2d 56: “We now adopt the same interpretation of the time of the injury for the purposes of the notice requirement of the LGTCA.”
 

 Moreover,
 
 Piselli
 
 is factually distinguishable from the case
 
 sub judice,
 
 because it involved a tort action against a private party, not a governmental entity, and it turned on C.J. § 5-109, titled “Actions against health care providers.” Thus, the
 
 Piselli
 
 Court discussed limitations in the context of a common law tort action against a medical provider; it did not address a legislatively created right of suit against a local governmental entity, for which the Legislature has waived immunity conditioned upon the provision of notice of the claim within the statutorily prescribed period.
 
 Cf. Baltimore County v. RTKL Associates, Inc.,
 
 380 Md. 670, 674, 846 A.2d 433 (2004) (recognizing that the State enjoys sovereign immunity in regard to tort actions unless the Legislature waived immunity pursuant to a specific statute.) Therefore, for purposes of limitations in regard to a minor’s claim against a private tortfeasor, the analysis of
 
 Piselli
 
 controls. But, in a suit under the LGTCA,
 
 Piselli
 
 does not excuse compliance with the statutory notice requirement, whether for adults or children.
 

 Furthermore, Article 19 does not preclude all regulation of access to courts. Instead, “statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable.”
 
 Murphy v. Edmonds,
 
 325 Md. 342, 365, 601 A.2d 102 (1992);
 
 see Doe v. Doe,
 
 358 Md. 113, 128, 747 A.2d 617 (2000);
 
 Hill v. Fitzgerald,
 
 304 Md. 689, 703, 501 A.2d 27 (1985);
 
 Whiting-Turner Contracting Co. v. Coupard,
 
 304 Md. 340, 360, 499 A.2d 178 (1985). The Act waives the immunity of a local government, subject to the terms of the Act; timely notice is a prerequisite to suit. If the Court of Appeals in
 
 Johnson
 
 found no constitutional violation or interference with access to the courts with respect to the requisite notice in a case involving a minor under the MTCA, we discern no constitutional violation created by the effect of the notice requirement on a minor whose claim arises under the LGTCA.
 

 
 *503
 
 As to both the MTCA and the LGTCA, the Legislature has consented to a waiver of sovereign immunity, but timely notice to the sovereign is a condition of waiver. To be sure, a child is dependent on an adult to comply with the Act by providing the requisite notice. Nevertheless, the General Assembly has the power to establish the terms under which it will permit a waiver of immunity, and was not required to exempt minors from the notice provision. Because it is the prerogative of the Legislature to create an exception to the notice period for minors, we may not rewrite or enlarge the statute by engrafting onto the notice provision an exception for minor claimants that the Legislature did not authorize.
 
 See Graves v. State,
 
 364 Md. 329, 351, 772 A.2d 1225 (2001);
 
 Heartwood 88, Inc. v. Montgomery County,
 
 156 Md.App. 333, 360, 846 A.2d 1096 (2004).
 

 Numerous other jurisdictions have declined to toll the notice period in regard to claims of minors brought under a state tort claims act, absent an express provision in the applicable statute.
 
 See, e.g., Martinez v. Val Verde County Hasp. Dist.,
 
 110 S.W.3d 480, 485 (Tex.App.-San Antonio 2003)(concluding that the Texas Tort Claims Act (“TTCA”) waives sovereign immunity under certain circumstances, but requires notice to sovereign within six months of injury. “The TTCA does not, however, contain any provision tolling the notice period for minors. The Legislature could have provided for an extension or tolling of the notice requirement ... Unless and until the Legislature provides for such a provision in the TTCA, we decline to create the common-law rule requested by appellants. We, therefore, hold that the TTCA six-month notice requirement was not tolled for [child’s] minority”);
 
 see Murray v. Milford,
 
 380 F.2d 468 (2d Cir.1967)(stating that notice provision is a substantive precondition to suit against town, and court may not impliedly establish an exemption for minors, because that is a legislative function);
 
 Birmingham v. Weston,
 
 233 Ala. 563, 172 So. 643 (1937)(concluding that minority status did not excuse the timely filing of a notice of claim against a city; the notice of claim was an absolute precondition of suit against local government);
 
 George v.
 
 
 *504
 

 Saugus,
 
 394 Mass. 40, 474 N.E.2d 169 (1985) (concluding that notice requirement is a precondition of maintaining a legal action against a government entity);
 
 McNicholas v. Bickford,
 
 612 A.2d 866 (Me.l992)(involving claim against a state agency and concluding that minority status, by itself, does not satisfy good cause exception to excuse belated filing of notice of claim).
 
 See also
 
 Isham, James L.,
 
 Local Government Tort Liability: Minority as Affecting Notice of Claim Requirement,
 
 58 A.L.R.4th 402 (1987).
 

 Were we to adopt appellant’s position, we would usurp the legislative function; ignore well settled principles of statutory construction; and undermine the goal of notice as a mechanism to promote the ability of local governments to anticipate and to plan for potential liability. Merely because this case involves a minor, the statutory language of the LGTCA, the principles of statutory construction, and the well established purpose of the Act’s notice provision do not permit us to toll the notice period. Although we are mindful of the harsh impact of our decision on Luis, who was completely unable to protect his own rights, we may not reform the Act by implementing the sweeping change in the law that appellant seeks here.
 

 JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.
 

 [1]
 

 . In her complaint, appellant refers to herself as "Nelly (Rios) Saravia." We shall use the name "Rios," however, as that is the name that appears on her brief. Although the pleadings do not refer to the child as "Junior,” we note that he has the same first, middle, and last names as his father.
 

 [2]
 

 . In view of the issues presented, we need not include a detailed summary of the facts pertinent to the alleged malpractice.
 

 [3]
 

 . To avoid confusion between Mr. Rios and his son, we shall refer to the child as "Luis” and to his father as "Mr. Rios.”
 

 [4]
 

 . According to Taber’s Cyclopedic Medical Dictionary 1779 (16th ed. 1985) ("Taber’s”), a sulcus is "a furrow, groove, slight depression, or fissure.”
 

 [5]
 

 . According to Taber’s, at 238, brachial plexus is defined as follows: "Network of lower cervical and upper dorsal spinal nerves supplying
 
 *467
 
 the arm, forearm, and hand.” (Cervical is "of, pert, to, or in the region of the neck.”) Taber's, at 326. "Dorsal” (is defined as "Pert, to the back.”) Taber’s, at 525.
 

 [6]
 

 . Taber's, at 616, describes Erb's palsy as "Paralysis of group of muscles of shoulder and upper arm involving cervical roots of 5th and 6th spinal nerves. The arm hangs limp, the hand rotates inward, and normal movements are lost.”
 

 [7]
 

 . In a Second Amended Complaint filed on March 4, 2002, appellant added David Solberg, M.D. as a defendant. Appellant amended her complaint a third time on September 9, 2002, adding Holy Cross as a defendant. The Hospital and Dr. Solberg were later dismissed from the suit.
 

 [8]
 

 . Neither the Record Extract nor the Record contains a copy of the entire deposition transcript. Moreover, the portion of the deposition
 
 *468
 
 transcript included in the Record Extract does not identify the particular attorney posing the questions. In her brief, however, appellant indicates that Mr. Wiggins (counsel for the Hospital) asked the first series of questions, while Mr. Frederick (counsel for the County and Dr. Footer) asked the later questions. We shall refer to the attorneys as "counsel for appellees.”
 

 [9]
 

 . Article 19 of the Maryland Declaration of Rights provides:
 

 That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land.
 

 [10]
 

 . C.J. § 5-109 states:
 

 (a) Limitations.—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3-2A-01 of this article, shall be filed within the earlier of:
 

 (1) Five years of the time the injury was committed; or
 

 (2) Three years of the date the injury was discovered.
 

 (b)
 
 Actions by claimants under age
 
 11.—Except as provided in subsection (c) of this section, if the claimant was under the age of 11 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 11 years.
 

 (c)
 
 Exceptions to age limitations in certain
 
 actions.—(1) The provisions of subsection (b) of this section may not be applied to an action for damages for an injury:
 

 (1) To the reproductive system of the claimant; or
 

 (ii) Caused by a foreign object negligently left in the claimant’s body.
 

 (2) In an action for damages for an injury described in this subsection, if the claimant was under the age of 16 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 16 years....
 

 [11]
 

 .
 
 Pepper
 
 involved a child born with a heart defect on January 6, 1987, which necessitated surgery within four months of his birth. 346 Md. at 684, 697 A.2d 1358. After surgery, complications arose that led to cardiac arrest and a resulting neurological impairment.
 
 Id.
 
 Eight months later, the Peppers’ attorney contacted the hospital for all medical records relating to the surgery.
 
 Id.
 
 at 685, 697 A.2d 1358. On March 23, 1993, the Peppers filed suit on behalf of their child and themselves under a negligence theory, failure to inform the parents of the risk of surgery, and loss of consortium.
 
 Id.
 
 The Hospital successfully raised the affirmative defense of limitations as to the parents' claims, pursuant to C.J. § 5-101.
 
 Id.
 
 at 685-86, 697 A.2d 1358. As a consequence, the parents could not recover for the child’s medical expenses incurred before the child reached the age of majority.
 
 Id.
 
 at 687, 697 A.2d 1358. Noting that children ordinarily cannot recover medical expenses for the time of their minority, because the parents are presumed responsible for those costs, the issue on appeal was whether the parents could proffer that they were unable to pay for the child's medical expenses, incurred as a minor, and thus allow the child to
 
 *498
 
 recover for the medical expenses incurred during his minority.
 
 Id.
 
 at 687, 697 A.2d 1358. The Court of Appeals ruled that, upon a sufficient showing that the parents were unable to meet the child’s medical expenses, incurred when the child was a minor, the child could seek to recover those medical expenses in his own tort action.
 
 Id.
 
 at 705, 697 A.2d 1358.
 

 [12]
 

 . The article has since been amended to require notice within one year.
 
 See
 
 S.G. § 12-106.